[Crim. No. 15. In Bank.—March 9, 1896.]

THE PEOPLE, RESPONDENT, v. JOHN CRAIG, APPELLANT.

CRIMINAL LAW—HOMICIDE—MURDER OF WIFE—EVIDENCE—ILL-WILL—THREATS AGAINST WIFE'S FAMILY—QUESTION FOR JURY.—Upon the trial of a defendant accused of the murder of his wife, evidence of his threats against the wife's family are admissible as tending to show that he was actuated by ill-will in the killing of his wife, and the indefiniteness of the threats is not a sufficient reason for excluding the testimony, the threats being broad enough to include the wife with the other members of her family, and it is for the jury to determine whether she was in fact one of the persons intended by the defendant.

ID.—SUBSEQUENT MURDER OF WIFE'S PARENTS.—Evidence of the subsequent deliberate murder of his wife's parents by the defendant without any word of warning, shortly after the killing of the wife by him, is admissible to show that the killing of the wife and her parents was part of one common plan, and being relevant to establish the motive of the crime of which defendant is on trial, is not rendered irrelevant by the fact that it could be used to establish another and different crime.

ID.—COMPETENCY OF CHILD AS WITNESS—DETERMINATION OF JUDGE CONCLUSIVE—DISCREPANCY OF TESTIMONY.—The determination of the judge that a boy under ten years of age is competent as a witness, after examination upon objection raised to his competency, is not subject to review, and the fact that the testimony of the child differed from that of other witnesses is not *prima facie* evidence of his incompetency.

ID.—SHOOTING WITH INTENT TO MURDER—KILLING OF ANOTHER—INSTRUCTIONS—DEGREE OF CRIME.—An instruction to the jury that if the defendant shot at his wife's brother with intent to murder him, and killed his wife instead, such killing is murder, is not erroneous in not stating the degree of murder of which he would be guilty, where the court elsewhere instructed the jury concerning the different degrees of murder.

Appeal from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

*George P. Phibbs, F. B. Guthrie, B. M. Marble,* and *Johnstone Jones,* for Appellant.

Respondent, in proving its case, was confined to the charge in the information; hence the only malice provable was malice against Mrs. Craig. (Pen. Code, sec. 1829; *Bratton* v. *State,* 10 Humph. 103; *McCoy* v. *State,* 25 Tex. 33; 78 Am. Dec. 520; *Ferrell* v. *State,* 43 Tex. 503; *McConnell* v. *State,* 13 Tex. App. 390; *Clark* v. *State,* 19 Tex. App. 495.) The court erred in permitting Willie Craig, aged eight years, to testify. (Code Civ. Proc., sec. 1880; Pen. Code, sec. 26; *State* v. *Michael,* 37 W. Va. 565.) The court erred in admitting evidence showing the killing of William and Mary Hunter twenty minutes later and three miles from the time and place of the killing of Emily Craig. (*People* v. *Ah Lee,* 60 Cal. 85; *People* v. *Wong Ark,* 96 Cal. 126; 21 Am. & Eng. Ency. of Law, 99; Pen. Code, secs. 950, 954, 1004; *People* v. *Alibez,* 49 Cal. 452; *People* v. *Majors,* 65 Cal. 138; *People* v. *Lane,* 100 Cal. 379; 101 Cal. 513; *People* v. *Nelson,* 85 Cal. 421; *People* v. *Bishop,* 81 Cal. 113, 117; *People* v. *Hartman,* 62 Cal. 562; *People* v. *Tomlinson,* 102 Cal. 24; *People* v. *Jones,* 31 Cal. 566; 32 Cal. 81; *People* v. *Lenon,* 79 Cal. 628; *People* v. *Stewart,* 85 Cal. 174; *People* v. *Bowen,* 49 Cal. 654; *Boyd* v. *United States,* 142 U. S. 450; *People* v. *Greenwall,* 108 N. Y. 296; 2 Am. St. Rep. 415; *Farris* v. *People,* 129 Ill. 521; 16 Am. St. Rep. 283; *Commonwealth* v. *Tuckerman,* 10 Gray, 198; *Commonwealth* v. *Campbell,* 7 Allen, 542; 83 Am. Dec. 705; *Shaffner* v. *Commonwealth,* 72 Pa. St. 60; 13 Am. Rep. 649; *Coleman* v. *People,* 55 N. Y. 90.) The court erred in giving its seventh instruction for the people, in not stating the degree of murder which the defendant would be guilty of upon their finding as true the facts as therein assumed. (*People* v. *Freel,* 48

Cal. 436; *Bratton* v. *State, supra; Musick* v. *State,* 21 Tex. App. 69.)

*W. F. Fitzgerald, Attorney General,* and *Henry T. Gage,* for Respondent.

The testimony of Miles Long and Emily Snyder was admissible to show motive and intent. (*People* v. *Ah Fung,* 17 Cal. 379; *People* v. *Kern,* 61 Cal. 245; 3 Rice on Evidence, sec. 41; *Fraser* v. *State,* 55 Ga. 325; Wharton's Criminal Evidence, 8th ed., sec. 456; *State* v. *Larkin,* 11 Nev. 328; *State* v. *Belton,* 24 S. C. 189; 58 Am. Rep. 245; *Dixon* v. *State,* 13 Fla. 636; *State* v. *Hymer,* 15 Nev. 54; *Hodge* v. *State,* 26 Fla. 11; *Anderson* v. *State,* 79 Ala. 5; *Hopkins* v. *Commonwealth,* 50 Pa. St. 9; 88 Am. Dec. 518; *Harrison* v. *State,* 79 Ala. 29; *People* v. *Brown,* 76 Cal. 574; *People* v. *Cronin,* 34 Cal. 205; *Keener* v. *State,* 18 Ga. 194; 63 Am. Dec. 269; *People* v. *Hong Ah Duck,* 61 Cal. 390; *State* v. *Campbell,* 35 S. C. 28; *Peterson* v. *Toner,* 80 Mich. 350.) The determination of the degree of the crime was left by the court to the jury under proper instructions. (*People* v. *Olsen,* 80 Cal. 126; *People* v. *Wright,* 45 Cal. 260; *People* v. *Doyell,* 48 Cal. 94; *People* v. *Foren,* 25 Cal. 365; 1 Bishop's Criminal Law, 7th ed., secs. 734, 736; *Commonwealth* v. *Breyesse,* 160 Pa. St. 451; 40 Am. St. Rep. 729; *State* v. *Payton,* 90 Mo. 220; *Durham* v. *State,* 70 Ga. 264; *McPherson* v. *State,* 22 Ga. 478; *State* v. *Gilman,* 69 Me. 163; 31 Am. Rep. 257; *State* v. *Hoover,* 2 Dev. & B. 365; 34 Am. Dec. 383; *Butler* v. *People,* 125 Ill. 641; 8 Am. St. Rep. 423; 1 Archbold's Criminal Pleading and Practice, 8th ed., pt. 1, p. 369.) The court did not err in permitting Willie Craig to testify. (Code Civ. Proc., sec. 1880; *People* v. *Cesena,* 90 Cal. 383; *Milligan* v. *Territory,* 2 Oklahoma, 164.) Evidence of the killing of William and Mary Hunter was admissible, to prove intent, to rebut the theory of accidental killing, and to prove or develop the *res gestæ.* (*People* v. *Lane,* 101 Cal. 517; *Goersen* v. *Commonwealth,* 99 Pa. St. 398; *Kramer* v. *Commonwealth,* 87 Pa. St. 301; *People* v. *Rogers,* 71 Cal.

568; *People* v. *Bidleman*, 104 Cal. 613; Wharton's Criminal Evidence, sec. 38; *Moore* v. *United Sta'es*, 150 U. S. 57; *State* v. *Patza*, 3 La. Ann. 513; *Commonwealth* v. *McCarthy*, 119 Mass. 354; *Commonwealth* v. *Coe*, 115 Mass. 501; *Pierson* v. *People*, 79 N. Y. 424; 35 Am. Rep. 524; *Makin* v. *Attorney General for New South Wales* (1894), L. R. App. Cas. 57; *People* v. *Johnson* (N. Y.), 34 N. E. Rep. 921.) It would have been error for the court to have instructed as to the degree of murder established by the evidence. (*People* v. *Hunt*, 59 Cal. 433; Pen. Code, sec. 187.)

HARRISON, J.—The defendant was tried for the murder of his wife, convicted, and sentenced to death. From this judgment of conviction, and an order denying a new trial, he has appealed.

The facts connected with the killing, as shown by the prosecution, are briefly as follows, viz: The defendant and his wife had been living separate from each other for several months, the wife living with her children at the "Hunter ranch"—the property of her father—about three miles north of Los Angeles. On the 25th of July, 1894, soon after sundown, the defendant, having provided himself during the day with some pistols, drove in a buggy from Los Angeles to the Hunter ranch, where he got out and went to the porch at the back or kitchen part of the house, and attempted to open the kitchen door. Finding it locked, he called out to his wife, who was in the kitchen, and, as she looked through the window and saw who it was, she asked him who gave him the right to come there. Upon his replying that he had the right to come and see his children, she said: "Do you know there is a man on the ranch?" and upon his inquiring where he was, pointed to her brother, George Hunter, who was approaching, saying: "There he comes." As George Hunter came up, Mrs. Craig unlocked the door, and he entered the house, going through the kitchen and diningroom to the hall, but immediately returned, going again upon the porch

through the kitchen door. As he stepped off the porch, the defendant, who was outside holding a pistol in each hand, shot him with the one in his right hand, and as Mrs. Craïg put out her hands as if to catch her brother from falling, the defendant stepped forward, and with the other pistol shot her in the head, killing her instantly. He then stepped over her body into the kitchen, holding up both pistols, saying: "I have got revolvers enough for the whole family," and went into the diningroom, where he approached Miss Jensen, who had run out of the kitchen, and threatened to shoot her also. She, however, escaped, and the defendant immediately left the house and drove away in his buggy.

After the evidence of the killing of the deceased, as aforesaid, had been introduced, Miles Long, a witness called by the prosecution, testified that he had had a conversation with the defendant with reference to the Hunter family, within three weeks prior to the killing, and was then asked to state whether the defendant had made a threat in the conversation relative to his children, and relative to the Hunters. Upon the objection of the defendant the court excluded the answer, on the ground that the question was leading. He was then asked: "State whether or not, at any time prior to this shooting, within six weeks thereafter, you had a conversation with this defendant relative to his wife having been taken away from him by somebody, and, if so, about when that was." To this question the defendant objected upon the ground that it was incompetent, irrelevant, immaterial, and not a part of the *res gestæ*. The court overruled the objection, saying in connection with its ruling: "I suppose the object of this testimony is to show some threat. At present I don't see any connection that it possibly could have with this case, except in that view, and I see no objection to this man's stating that conversation. He has been led up to it, and the time and the subject matter, and I see no objection to his going on and telling what that conversation was. If it was in regard to threats, or anything of the kind, the

jury must be the judges of that, and not the court. I can't pass upon the weight of the testimony, nor how much it proves. If it should turn out to be absolutely irrelevant, and did not prove anything at all, we can strike it out. I can't pass upon the testimony in advance." The court thereupon directed the witness to state what the defendant said. The witness thereupon answered that the defendant stated to him, within a period of three weeks, that " the Hunters had taken his wife and children from him, and wouldn't allow him to see his children or his wife, and he wouldn't stand it much longer." Another witness, Emily Snyder, who had testified that Mrs. Craig with her children went to San Francisco in that year, and returned about the last of May, and that, while they were away, she had had a conversation with the defendant, was asked: " Was anything said on that occasion about ' something happening,' or anything of that kind?" And upon the objection of the defendant to her answering the question being overruled, she testified in answer thereto: " Yes, sir; he said —that is, while they were in San Francisco—he said to me that ' there would be something happen sure before it would end,' and then he said that if he went out to the ranch when they came back, and he went to the ranch to see them, if they interfered with him, why he would put a hole through them."

It is contended on the part of the appellant that the court erred in admitting this testimony for the reason that it has no tendency to show any ill-will on his part toward his wife, and that upon his trial for her murder it was incompetent to prove ill-will or malice on his part toward any other person. This testimony was competent, however, and properly admitted for the purpose of showing the intent of the defendant in killing his wife, and that he acted with malice aforethought. To establish this intent it was competent for the prosecution to offer any evidence that would enable the jury to ascertain the state of his mind at the time of the killing, and this would be best evidenced by his acts

and declarations at or about that time. If the conversation between the witnesses and the defendant embodied a threat on his part, it was proper that it should go before the jury for the purpose of establishing his feeling toward his wife, and in determining whether he was actuated by malice. Whether it was of such a character as would authorize such an inference could be determined by the jury only after it had been given, and, while the weight to be given to the testimony was to be determined by them, its admissibility was to be determined by the court before it was known what the testimony would be. The indefiniteness of the threats was not a sufficient reason for excluding the testimony. They were broad enough to include his wife with the other members of her family, and it was for the jury to determine whether she was in fact one of the persons intended by him. Much must be left to the discretion of the trial judge in determining whether the proffered testimony has any relevancy to the issue to be determined, or whether it is such that the jury will be authorized to make any inference therefrom which will aid them in determining the issue they were to try. The court was required to determine primarily whether the general character of the conversation or declaration sought to be shown, as embodied in the form of the question, considered in connection with the evidence already before the jury, was such as to authorize an inference of the intent with which the killing was done. It could not determine in advance whether the answer of the witness would be relevant for the purpose of making such inference. If the answer should be entirely irrelevant it would be disregarded, or could be struck out, while if it was relevant it was proper to be considered by the jury. There was other testimony in the case bearing upon this point. Castoreno testified that the defendant said to him a few days before the shooting that "the old folks and his wife was crowding him too much altogether, and they were trying to get the best of him in every respect, and he would put an

end to them all some of these nights." It was for the jury to determine from the language used by the defendant in these conversations, taken in connection with other evidence in the case, what was his meaning when he said, " he wouldn't stand it much longer," or " there would be something happen before it would end," or " if they interfered with him he would put a hole through them," and it was for the jury to determine, too, whether by these remarks he included his wife with the other members of the Hunter family. The testimony of these witnesses was to be considered by the jury in connection with other testimony upon this subject, and it is not to be assumed that the jury would determine any of the questions before them until all of the evidence had been introduced, and the case was submitted to them for a verdict. The court, in admitting the evidence, had limited the scope for which it was to be considered, and in its instructions to the jury further told them that, if all the evidence failed to show any motive on the part of the accused to commit the crime charged against him, they were to consider that circumstance in connection with the other evidence in making up their verdict.

The defendant was a witness in his own behalf, and in recounting the circumstances under which the homicide was committed testified that the shooting of George Hunter was in self-defense, and that in the effort to defend himself against him one of the shots which he had intended for him had accidentally struck his wife, and caused her death. For the purpose of defeating the claim of the defendant that the killing of his wife was accidental, the prosecution called certain witnesses in rebuttal, whose testimony was to the effect that immediately after the killing the defendant left the house, and drove rapidly for a distance of about three miles to a house on Buena Vista street, in the city of Los Angeles, arriving there within twenty minutes after the killing of his wife, got out of his buggy and went up on the porch where William and Mary Hunter, the father and

mother of his wife, were then sitting, and deliberately, without any word of warning, killed them both. The defendant objected to the introduction of this evidence, and now urges it as error for the reason that it tended to establish a different crime from that for which he was on trial, and constituted no part of the transaction connected with the killing of his wife. The introduction of the evidence is upheld by the prosecution on the ground that the killing of the father and mother, and of the wife, was part of a single plan, outlined by the threats of the defendant, and that this evidence tended to establish this purpose on the part of the defendant to exterminate the family, and thus characterize and give point to his threats, and to disprove the claim that the killing of his wife was accidental.

We are of the opinion that this testimony was properly admitted. Although a defendant can be convicted for only the offense which he is charged with having committed, evidence which may have the effect to establish another crime than that for which he is on trial is not for that reason inadmissible. If the evidence offered is relevant to establish the crime for which he is on trial, it is not rendered irrelevant by reason of the fact that it could be used to establish another crime for which he might be charged. Evidence of a material fact which tends to show the intent or motive of the defendant, although it tends to prove the commission of another offense by him, is relevant and admissible in a criminal action. Taken in connection with the previous threats on the part of the defendant against the Hunter family, this testimony was relevant for the purpose of showing the scope of those threats, and enabling the jury to determine whether the killing of these persons was a part of the execution of a single plan that had existed in his mind. If the jury should so determine, it would enable them more readily to determine whether the killing of his wife was also a part of that plan, and whether the claim of the defendant that he had accidentally shot her was

well founded.     The court instructed the jury with
reference to this evidence that it could only be consid-
ered by them in relation to the motive or intention of
the defendant in firing the shot that killed his wife, and
that unless they were satisfied that the killing of Will-
iam and Mary Hunter was in pursuance of a plan formed
prior to the killing of his wife, it could not be considered
by them in determining the guilt or innocence of the
defendant as to the killing of his wife, but that, if they
did find it was in pursuance of such plan, it could be
considered for the purpose of determining whether the
killing of his wife was accidental or designed.

The ruling of the court that Willie Craig was a com-
petent witness cannot be reviewed on this appeal.     The
provision in section 1880, of the Code of Civil Proce-
dure, declaring that " children under ten years of age,
who appear incapable of receiving just impressions of
the facts respecting which they are examined, or of re-
lating them truly," cannot be witnesses, implies that it
must "appear" to the trial judge that the child is in-
competent for the reasons therein named, and of neces-
sity requires his capacity to receive impressions of the
facts, and of relating them truly, to be determined by
the trial judge.     The burden is upon the person who ob-
jects to the child being a witness, to show that he is in-
capable, and the determination of the judge upon such
objection, and an examination of the child, is not a mat-
ter for review, any more than is his ruling upon the
capacity of an adult who may be offered as a witness.
The fact that the testimony of the child differed from
that of other witnesses is not even *prima facie* evidence
of his incapacity.     Such difference is frequently found
in the testimony of adult witnesses.

Objection was taken to certain remarks of counsel for
the prosecution, made in their arguments to the jury,
but these remarks appear to have been no more than an
animated argument upon the testimony in the case, and
presented to the jury with no more zeal and earnestness

than would be natural in attempting to convince them that it justified a verdict of conviction.

The court instructed the jury that, if they should find that the defendant shot at George Hunter, not in necessary self-defense, but unlawfully, feloniously, and with malice aforethought, but missed him, and thereby then and there killed Emily Craig, he would be guilty of murder. It is urged by the appellant that this instruction was erroneous in not stating to the jury the degree of murder of which he would be guilty. The instruction was not erroneous. (*People* v. *Olsen*, 80 Cal. 122.) The court elsewhere instructed the jury concerning the different degrees of murder, and the facts necessary for a conviction thereof.

Other exceptions were taken by the appellant to the instructions of the court, and to its refusal to give certain instructions asked on his behalf. It is unnecessary to repeat them here, but upon a careful consideration of the entire charge of the court we are satisfied that the jury were correctly instructed upon the propositions of law applicable to the case, and that the instructions requested by the appellant which were not given were not authorized.

The judgment and order are affirmed.

GAROUTTE, J., VAN FLEET, J., McFARLAND, J., TEMPLE, J., and BEATTY, C. J., concurred.

Rehearing denied.