[Crim. No. 1987. Third Dist. Mar. 13, 1947.]

THE PEOPLE, Respondent, v. JACK DENTON, Appellant.

Arthur De Beau Carr and Kenneth W. Donelson for Appellant.

Robert W. Kenny and Fred N. Howser, Attorneys General, James O. Reavis and Charles W. Johnson, Deputy Attorneys General, for Respondent.

SCHOTTKY, J. pro tem. — An information was filed against defendant and appellant in which he was accused as follows: In count one of the crime of sex perversion, a violation of section 288a of the Penal Code, it being alleged that defendant and appellant on May 13, 1946, participated in an act of copulating his male sexual organ with the mouth of one Joe Hernandez. In count two of the infamous crime against nature, committed on the same date upon the person of one Joe Hernandez; in counts three, four and five of prior convictions of felonies, one of arson and two of burglary. Appellant pleaded not guilty to counts one and two, and admitted the prior convictions charged in counts three, four and five. Upon trial the jury returned separate verdicts finding appellant guilty on counts one and two. Appellant's motion for a new trial was denied and appellant was thereupon sentenced to concurrent terms of imprisonment in the state prison. This appeal is from said judgment and from the order denying a new trial.

The first of appellant's numerous claims of reversible error is that the evidence is insufficient to support the ver-

dicts. The substance of appellant's contention upon this point is that the evidence of the prosecution, and particularly the complaining witness, Joe Hernandez, was so palpably false and incredible that it cannot afford a base for the verdicts. Before discussing this contention we shall briefly state what the testimony in the instant case shows.

It is apparent that appellant accosted Joe Hernandez, aged 10, Billie Hernandez, aged 8, and Bob Keola, aged 10, in the forenoon of May 13, 1946, while they were playing hookey from school and were fishing under the M Street bridge across the Sacramento River on the Yolo County side. The appellant soon separated the three boys, striking Bobby Keola and causing Billie and Bobby to take to their heels to secure help. Joe was left alone with Denton who pulled his pants down, and tried to insert his penis in the boy's "seat." Joe then put his pants on, and Denton kept hold of his arm and guided him on top of the levee. The two then walked up the river about a block towards the I Street bridge and stopped under a tree at a point between the levee and the river, when the defendant pulled the boy's pants down again, and unbuttoned his own trousers. While the boy was lying down, defendant then attempted to insert his penis in the boy's "seat." Denton then told the boy to put Denton's penis in his mouth, and struck the boy in the eye and tried to choke him, following which the boy placed his mouth around Denton's penis. Following this performance, Denton again inserted his penis in the boy's rectum, inserting it to such an extent that it hurt. Joe began to cry, and the act hurt him so much that he had to urinate. Joe Hernandez recounted in detail the acts of sexual perversion and degeneracy practiced upon him; and the witnesses Nathan Ballansaw and Leon Watkins, who had been summoned to the scene by the two boys who had run off, both observed appellant in a most compromising position, his trousers lowered, the trousers of the boy also lowered, and appellant's private parts exposed. The witnesses Ballansaw and Watkins came into view of appellant and the boy from different directions and not at the same moment. Ballansaw testified that the boy was facing appellant, his face being about five inches from appellant's penis while Watkins testified that appellant had his penis by the boy's rectum. Appellant attempted to flee from the scene and pleaded with Ballansaw and Watkins to "allow him a chance." An examination of the victim's

rectum indicated that the mucous membrane appeared to be irritated, which irritation the examining doctor testified could have been caused by the insertion of a penis. While the opinion given by the doctor did not positively limit the cause of the boy's anal disorder to a criminal attack, it was certainly consistent therewith.

Appellant in his testimony denied any criminal acts and introduced testimony seeking to impeach the complaining witness and other witnesses for the People, but the verdicts of the jury indicate that they did not place much reliance upon the testimony of appellant and his witnesses.

Appellant in his brief seeks to point out inconsistencies and contradictions in the testimony of Joe Hernandez and other witnesses, but these were all matters for the jury to pass upon and are not matters to be weighed by an appellate tribunal. A reading of the record not only convinces us that the evidence is sufficient to support the judgments, but makes it difficult for us to understand how the jury could have arrived at any other verdicts. There is nothing inherently improbable in the testimony relied upon by the prosecution and we can only conclude that the contention of appellant that the evidence is insufficient to support the verdicts is entirely devoid of merit.

 Appellant's second contention is that Joe Hernandez, the complaining witness, was incompetent to testify. The record shows that said witness was ten years old and that at the outset of his testimony he was interrogated as to the nature of an oath and answered that he knew it was wrong to tell a lie and that he knew he would be punished if he did not tell the truth. The trial court after participating in the preliminary questioning and seeing and hearing the witness ruled that the witness was competent to testify.

This contention of appellant lacks substantial merit. The law is well settled in California that all persons capable of perception and communication may be witnesses. (Pen. Code, § 1321; Code Civ. Proc., § 1879.) The law upon this subject is well stated in the case of *People* v. *Harrison,* 46 Cal.App.2d 779, at page 785 [117 P.2d 19], as follows:

"It is the law that children under ten years of age cannot be witnesses where they appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly. (Sec. 1880, Code of Civil Procedure.) The last cited section means nothing more than that

if a child under ten years of age appears to the trial judge to be competent, i. e., to have the capacity to receive impressions and to relate them truthfully, he becomes a competent witness. (*People* v. *Gasser*, 34 Cal.App. 541, 543 [168 P. 157].) After the judge has heard the child give his testimony and has determined that he was a competent witness, such determination is not a matter of review any more than his ruling upon the capacity of any other witness. (*People* v. *Craig*, 111 Cal. 460 [44 P. 186]; *People* v. *Morcumb*, 28 Cal.App.2d 465 [82 P.2d 714].) There is nothing in the testimony of any of the five children that indicated in the slightest degree his incompetency to testify. The only two daughters under ten years of age were ID and OV. At the time of the trial ID was more than 9½ years of age; her testimony was responsive, coherent and intelligent. The fourth daughter was OV, eight years of age. The trial judge satisfactorily tested her qualifications on *voir dire*. In addition to the fact that the trial judge became satisfied as to her competency, the record of her testimony shows that she was intelligent enough to receive impressions and competent intelligibly to relate them. Since a review of her testimony appearing in the record shows that the court was justified in allowing her to testify before the jury, we are not concerned here with any lack of thoroughness in her *voir dire* examination. (*People* v. *Freeman*, 24 Cal.App.2d 619 [75 P.2d 640].) '' See, also, *People* v. *Carpenter*, 3 Cal.App. 2d 746, 748 [40 P.2d 524]; *People* v. *Watrous*, 7 Cal.App.2d 7, 10 [45 P.2d 380].

Appellant next contends that the trial court committed certain errors of law in ruling upon the admissibility of evidence. The first of these concerns the testimony of Tom Wallace, a deputy sheriff, who was called to testify as to the physical condition of Joe Hernandez on May 15th, two days after the alleged offenses. Counsel for appellant objected to such testimony, but did not state any ground of objection. The court overruled the objection, stating that "it goes to the weight and not to the admissibility." The witness then testified that Joe Hernandez's eye was black and swollen. The evidence was clearly admissible and it was for the jury to determine whether the physical condition of the complaining witness on May 15th, bore any relation to the events of May 13th. A judicial determination to the effect that "the remoteness of the testimony would go to the weight and not to its admissibility" is contained in the case of *People* v. *Collins*,

195 Cal. 325, at page 351 [233 P. 97], citing 10 Cal.Jur. 798; Code Civ. Proc., § 1870, subd. 15.

■ Bessie Dameron was a witness called by appellant and upon direct examination testified that Joe Hernandez had made statements to her indicating that appellant was not guilty of the offenses charged. The district attorney cross-examined her vigorously as to how she happened to go to the Hernandez home to talk with Joe and the witness stated she had read about the matter in the paper, and had then talked with a woman who knew appellant and that she had then decided to find out for herself whether it was right or wrong. The district attorney then asked this question, which was objected to by appellant: "So you became a detective?" to which the witness answered in the negative. In view of the testimony which preceded it, the question was quite proper, and in any event it is difficult to understand how it can be prejudicial.

Appellant also cites as prejudicial error the following which occurred during the cross-examination of the same witness, Bessie Dameron: "Q. You threatened the boy? A. I did not. Q. While you were in there you threatened his mother? A. I did not. Mr. Carr: I ask that the jury be instructed that this is improper examination. The Court: I don't see anything out of the way. Mr. Carr: I do, your Honor, he is shouting at her. The Court: Overruled."

It must be borne in mind that the prosecutor was cross-examining a defense witness. As to the latitude allowed in cross-examination it is stated in 27 California Jurisprudence, page 96, paragraph 76: "The authorities all agree that wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility, especially if the witness is a reluctant one or is hostile, or if he is one of the parties in interest, or is a witness against a defendant in a criminal prosecution." And on page 103 of the same work, paragraph 78, it is stated: "A witness may be cross-examined for the purpose of testing his accuracy, veracity or credibility, and great liberality is shown in the allowance of questions directed to that end. Thus it is proper to ask questions which are designed to test the knowledge, recollection, interest, mental condition and character of the witness, and likewise to elicit answers which will contradict his testimony."

We are unable to agree with appellant's contention that the

trial court erred in refusing to instruct the jury that the said cross-examination was improper.

Appellant next contends that the trial court erred in sustaining two objections made by the district attorney to questions asked by appellant's counsel in his direct examination of appellant. Appellant's counsel asked him if he had gone down to Berkeley and asked them to give him a lie detector test and he had answered in the affirmative. His counsel then asked: "What did the man tell you down there?" This question was objected to upon the ground that it was hearsay, which objection was sustained by the court. Later appellant testified that his former attorney, Mr. Green, had told the sheriff that appellant wanted to take the lie detector test. He was then asked what answer the sheriff gave to Mr. Green and the court quite properly sustained an objection to the question as it was not only hearsay, but otherwise incompetent and immaterial as well.

Since no attempt was made by the prosecution to introduce in evidence either the results of a lie detector test taken by appellant or the fact of his failure to take such a test, it follows that the reason why appellant did not take such a test, or any comments on the subject, were entirely immaterial, and the trial court properly refused to permit the question to be answered.

It was clearly competent for Doctor Coleman to testify concerning his examination of the prosecuting witness made a short time after the alleged offense, and to give his opinion that certain abrasions and irritations in the anal area could have been caused by the insertion of a penis or could have been caused by the boy's falling on a rock or in some other way. Appellant's objections to this testimony were properly overruled.

Appellant's fourth major contention is that the trial judge made certain comments within the hearing of the jury which constituted prejudicial misconduct. Appellant sets out in his brief a number of comments by the court which merely show that in view of the extreme heat the trial judge appeared to be anxious to have the trial move along as rapidly as possible, and after counsel for appellant had asked the same questions of the complaining witness a number of times, the trial judge called his attention to that fact, whereupon counsel stated to the court: "Your Honor, it wouldn't at all surprise me, if I have the indulgence of the Court, that I get two

days for the witness." The court then stated: "Now I can tell you you won't get two days." These remarks of the court were in no sense prejudicial to appellant and appellant's counsel did not even except to them. Furthermore, it must not be lost sight of that section 1044 of the Penal Code provides:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

▇ Perhaps the nearest approach to a prejudicial comment by the court occurred after counsel for appellant had objected to asserted prejudical conduct on the part of the district attorney. The court evidently considered the matter closed and when appellant's counsel sought to discuss the matter further, the court stated: "Shut up. Sit down and behave yourself," to which comment appellant's counsel took an exception. Due to the persistence of counsel, the court evidently lost its patience and spoke more sharply than it should have done. When a defendant is on trial in a criminal case, particularly one as serious as the one in which appellant was on trial, a trial judge should be extremely careful not to make any comment that would tend to lower defendant's counsel in the estimation of the jury because such a comment could hardly fail to be prejudicial to a defendant. We believe that it was improper for the trial court to use the language that it did toward appellant's counsel even though the court may have been justifiably exasperated at counsel's conduct of the case. However, we are mindful of the provisions of section 4½ of article VI of our state Constitution which provides that "No judgment shall be set aside, or new trial granted, in any case, on the ground of . . . or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." As we read the record, the evidence against appellant was so overwhelming that the remarks of the court complained of, even though improper, could not have resulted in a miscarriage of justice.

▇ There is no merit in appellant's contention that the apparent inadvertent use by the trial judge in his statement

to the jury of the language "a terrible crime against nature" instead of "the infamous crime against nature" was prejudicial error. In our opinion the word "terrible" is a milder characterization of the charge than the word "infamous."

Appellant's next main contention is that the district attorney was guilty of prejudicial misconduct during the trial of the case. Appellant's first point that the district attorney asked certain improper questions upon cross-examination of the defense witness, Bessie Dameron, has already been disposed of by us in holding that the said questions were proper cross-examination.

Appellant then contends that certain portions of the district attorney's argument to the jury were prejudicial misconduct. Appellant contends that the district attorney made certain statements which were not supported by the evidence. A reading of these portions of the argument, together with a reading of the record, convinces us that the district attorney was giving his theory of what the evidence showed and that he did not depart from the evidence and the inferences that could reasonably be drawn therefrom. Furthermore, the jury was instructed by the court that the statements of counsel on either side were not evidence in the case and that they must look entirely to the proof in ascertaining what the facts were. And even if the remarks of the district attorney were improper, it would be a sufficient answer to appellant's contention to point out that he failed to make any objection to them at the time, and failed to request the trial court to properly admonish the jury at the time the alleged errors took place. (See 24 C.J.S. p. 613, § 1798; *People* v. *Pilgrim,* 73 Cal.App. 2d 391, 397 [166 P.2d 636].)

Appellant next contends that the trial court committed error in denying appellant's motion for a mistrial. The grounds of said motion were: (1) Misconduct of a juror, and (2) perjury with the knowledge of a public official.

The first ground was based upon the fact that Constable Ellis Barry, a witness for the prosecution, drove juror Mrs. Frances M. Sherman from the Yolo County Court House at the conclusion of the first day of the trial to Broderick in Yolo County. We think it was improper for the prosecution witness to have given the juror a ride and the trial court was correct in expressing his disapproval of it, but there is no showing that the juror talked with the constable about the case, and it must be presumed that the juror heeded the in-

structions of the court given prior to adjournment admonishing the jurors not to talk with anyone concerning the case. We believe that witnesses should keep out of the presence of jurors during the trial of a case because such contact could easily result in a mistrial, but we do not believe that any prejudice resulted in the instant case as it merely appears to be a matter of the witness giving the juror a ride home.

The second ground of the motion for a mistrial was that Constable Ellis Barry passed money to prosecution witness Nathan Ballansaw and instructed him how to testify. Two defense witnesses testified that they saw the constable pass money to the witness in the hallway of the court house and heard him instruct the witness how to testify. This testimony was denied by Ballansaw. All of the testimony was before the jury and by its verdict the jury impliedly found against the testimony of the defense witnesses on this point, as did also the trial judge when he denied the motion for a new trial.

We are therefore unable to agree with appellant's contention that the court erred in denying his motion for a mistrial.

Appellant's seventh main contention is that the trial court erred in refusing to give some of the instructions offered by appellant and in improperly giving other instructions.

Appellant's first point under this heading is that the trial court failed to give the following instruction offered by appellant:

"The Court instructs you that you are not to disregard the testimony of the defendant because he is charged with a crime, but you are to consider his testimony, giving it the same weight and credibility as though he were not charged with an offense. You must consider his testimony along with that of other witnesses and facts and circumstances which have been adduced in this case. And if his testimony is such that it creates a reasonable doubt in your minds, then you must find the defendant not guilty."

However, the court did give the following instructions covering the subject:

"The jury has no right to disregard the testimony of the defendant on the ground alone that he is defendant and stands charged with the commission of a crime. The law presumes the defendant to be innocent until he is proven guilty, and the law allows him to testify in his own behalf

and the jury should fairly and impartially consider his testimony together with all the other evidence in the case.''

''A defendant in a criminal action is not compelled to testify, but has the right to voluntarily testify in his own behalf, and his testimony is entitled to the same weight and credit as that of any other witness, and the jury should fairly and impartially consider his testimony, together with all other evidence in the case. A defendant having so offered himself as a witness becomes subject to the same rules for testing his credibility before the jury by impeachment or otherwise, as any other witness.''

''The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact in this case.''

When the foregoing instructions are considered in connection with the instructions on presumption of innocence and reasonableness, it is clear that all proper matters included in the refused instruction were fully covered by other instructions and that no prejudice resulted to appellant by the court's refusal to give the offered instruction. A trial court is not required to give verbatim every instruction offered by a defendant. All that appellant was entitled to was that the jury be fully and fairly instructed on all material phases of the case, and a reading of the court's instructions convinces us that the court did so instruct the jury in the instant case.

The trial court gave the following instruction at the request of defendant:

''As a matter of law, if you believe from an examination of the evidence in certain of its aspects that the defendant is guilty, and if you further believe from an examination of other aspects of the evidence that the defendant is not guilty, then you should adopt that view of the evidence which will lead to the acquittal of the defendant, rather than that view which leads to his conviction, if that view of the evidence which leads to his acquittal is as reasonable as that which leads to his conviction.''

Appellant complains, however, because the trial court immediately added:

''That means he is presumed to be innocent until he is found guilty. All doubt should be resolved in his favor.''

The contention of appellant is without merit. An instruction as to the presumption of innocence, and as to reasonable doubt, given in the language of section 1096 of the Penal Code, to which the court added that such presumption goes

with the defendant all through the case and operates in his favor until a verdict is arrived at, fully and fairly states the law upon the subject. (*People* v. *Chaves,* 122 Cal. 134 [54 P. 596].)

 Appellant's contention that the court improperly used the word "found" instead of "proven" is likewise without merit. A judicial opinion squarely in point is the case of *People* v. *Davenport,* 13 Cal.App. 632 [110 P. 318], where an instruction was held not to be objectionable as using the word "shown" instead of "proved." The logic of the opinion applies where the term "found" is used instead of "proved."

 Appellant next complains that the trial court erred in declining to give the following instruction requested by him:

"You are further charged that a witness whom you find to be false in one part of his testimony is to be distrusted in others."

The court did, however, give the following instruction:

"A witness wilfully false in one material part of his testimony is to be distrusted in others; that is to say, the jury may reject the whole of the testimony of a witness who has wilfully sworn falsely as to a material point, and the jury, being convinced that a witness has stated what was untrue, as to a material point, not as a result of mistake or inadvertence, but wilfully and with the design to deceive, may treat all of his testimony with distrust and suspicion, and reject all unless they shall be convinced that he has in other particulars sworn to the truth."

The instruction given by the court correctly states the rule in California. In the recent case of *People* v. *Wheeler,* 75 Cal.App.2d 360, this court said at page 365 [171 P.2d 62]:

"Appellant relies upon *People* v. *Hicks,* 53 Cal. 354, where the court instructed the jury that 'a witness false in one part of his testimony is to be distrusted in others,' and refused to give a requested instruction 'that if they believed any witness had, upon the stand, wilfully sworn falsely in respect to any matter material to the issue on trial, that they should disregard his testimony altogether.' There the court said, citing *People* v. *Sprague,* 53 Cal. 491, that 'the correct interpretation of subd. 3 of sec. 2061 of the Code of Civil Procedure is, that a witness *wilfully* false in one part of his testimony is to be distrusted in others. Assuming this to be the correct construction, the effect of this provision is that if a witness is wilfully false in one portion of his testimony he

"is to be distrusted in others"; and not that his whole testimony is to be absolutely rejected.' "

Near the close of his instructions to the jury, after explaining to the jury the forms of verdict that would be submitted to them, the court stated:

"There are two counts. One is what they call sex perversion. You must render one verdict on that count, that is, guilty or not guilty. The second count is a terrible crime against nature. You should render a verdict on that count, either guilty or not guilty. In other words, you render two verdicts, and these forms are prepared for your use, and are simply signed when all twelve of you have found either guilty or against conviction."

Appellant contends that a serious error was committed by the court in referring to the second count as "a terrible crime against nature." Sodomy is invariably designated as the "infamous crime against nature." It is difficult to understand how appellant could be prejudiced by the use of the word "terrible" instead of "infamous," as the latter word is the more opprobrious. Furthermore, the court instructed the jury that in his instructions he was expressing no opinion on the weight of the evidence or the truth or falsity of any witness's statement, or that any fact was or was not proven.

Appellant next contends that the court committed a most serious error in failing to instruct the jury that as to each of the first two counts the jury must agree unanimously. There is no merit in this contention as the instructions clearly state what is charged in each count and the court submitted to the jury two forms of verdict as to each count, and informed the jury that they must agree unanimously before they could arrive at a verdict.

Appellant contends further that the court erred in not requiring the prosecution to elect, and the jury to find upon which act of sodomy and sex perversion they were finding appellant guilty. At first blush there would seem to be some merit in this contention, but upon analysis, it appears to be without substance.

Appellant seems to be contending that the prosecution proved that appellant committed more than one act of both sex perversion and sodomy, although he himself denied the commission of any such act. At the trial his counsel made no demand that the district attorney make an election as to

which particular act he relied upon to sustain the conviction. Furthermore, the jury may well have concluded from the evidence that there were not several completed acts of sodomy but that, after attempting to perpetrate acts of sodomy upon the boy, appellant finally achieved but one completed act. As to the charge of sex perversion only one act was testified to by the complaining witness. The entire incident which resulted in the charges against appellant began when appellant accosted the boys under the bridge and continued without interruption until the witnesses Ballansaw and Watkins came upon the scene and appellant started to run away. Appellant did not request that the district attorney make an election, nor did he request any instruction on the subject, and under the circumstances of this case and the evidence in the record we do not believe that any such instruction should have been given.

Appellant's final contention is that, because of the various points enumerated in his brief, which points we have hereinbefore discussed, he did not receive a fair trial. We believe that the evidence of appellant's guilt was overwhelming, that the jury was fully and fairly instructed, that none of the errors complained of resulted in a miscarriage of justice, and that the judgment of conviction and the order denying a new trial should be affirmed. To do otherwise would be to disregard section 4½ of article VI of our Constitution.

The judgment and the order are affirmed.

Adams, P. J., and Peek, J., concurred.