## UNITED STATES v. MARINE.
### Cr. A. No. 631.

United States District Court
D. Delaware.

July 12, 1949.

William Marvel, U. S. Atty., of Wilmington, Del., for United States of America.

H. Albert Young, of Wilmington, Del., for defendant.

LEAHY, Chief Judge.

Defendant [1] at his second trial was convicted of possession of stolen goods knowing them to be stolen. Defendant filed a motion in which he urged many reasons for a judgment of acquittal or in the alternative a new trial. Assignment of Error No. 16 charged that Juror No. 7 engaged in conversation and conduct with government witnesses which were prejudicial to defendant. This matter was set down for separate hearing, for if this error was prejudicial there would be no need to pass on the remaining alleged errors.

---

[1] Defendant, in charge of a baggage car of the Pennsylvania Railroad on a run from Philadelphia to Laurel, Delaware, stood trial for having in his possession stolen goods allegedly taken from baggage under his control. At the first trial the jury were deadlocked and later discharged.

At the hearing on Assignment of Error No. 16 an amazing and unseeming situation was developed. The facts brought out at the hearing showed that Juror 7 was a resident of Sussex County. On his arrival in Wilmington on the first day of the trial, he testified he had some difficulty in finding a parking place. By a fortuitous circumstance he made inquiry of a parking place of Edward W. Flounders, an employee of the Pennsylvania Railroad and who appeared as a government witness. The juror was impressed by the kindly way he was advised by Flounders, whom he had never seen before.

The fact is Flounders testified in the morning session of the first day of four days of trial. Although Juror 7 was slightly vague on the point, it seems apparent from all the testimony that he had lunch with Flounders on the first day of trial. It is further apparent that while they met in a lunch room, there was plenty of available space for eating at different tables. During lunch there was conversation and at the conclusion of lunch the government witness Flounders and Juror 7 left together and went to the public square, opposite the Court House, where they sat on a park bench talking and conversing. They did not separate until it was time to return to court for the afternoon session.

It must be clear that at the time of the lunch on the first day, Juror 7 knew that Flounders had testified as a government witness. On the second day of trial Flounders also testified and at the noon recess Juror 7 asked to have lunch with him. Again they had lunch, conversed with one another and remained together during the entire noon recess.

On the third day of trial, the last day in which testimony was introduced, Juror 7 again asked Flounders to have lunch with him. They remained together on this occasion during the noon recess, discussed various topics, and it appeared from all the testimony that they discussed persons of mutual acquaintance, including Captain Oscar Thomas of the Pennsylvania Railroad police, who was also a government witness. This day they left the restaurant together, sat down on a park bench in the public square not far from the sidewalk, and then Harry C. Messick, another government witness, joined them. It appears from the evidence that Mr. Messick did not participate much in the conversation but did ask Juror 7 one or two questions about people living around Milford.

Finally, on the last day of trial, when all the testimony was in, Juror 7 engaged in conversation with Captain Thomas. It was impossible for Juror 7 to lunch with Flounders on that day for the case had been submitted to the jury and the jurors were not permitted to separate. The evidence was vague and slightly conflicting as to the various subjects discussed at the meetings between Juror 7 and Flounders. It was conflicting because Juror 7 said the conversations were limited to the charms of a young lady who was a waitress at their eating place; crops; and matters of local interest in the lower part of the state. Juror 7 was asked repeatedly and was very specific in his denial that railroading or any railroad men were ever discussed. Flounders, on the other hand, testified that they did discuss railroading and several railroad men, particularly Captain Thomas, who had been known for many years by Juror 7.

From all the testimony, Juror 7 and Flounders had very little in common. There were marked differences in ages and also in intellect, as disclosed by the testimony at the hearing. Further, the courtroom on each day except the last day was packed with railroad men, most of whom were acquaintances and even personal friends of Flounders.

The government recognized that communication and social intercourse between a juror and a government witness such as admittedly existed in this case gives rise to a presumption of misconduct and casts on it the burden to dispel such presumption. The government urges, however, that the facts elicited at the hearing effectively dispel the presumption of misconduct. Defendant, on the other hand, urges the evidence fails by a wide margin to dispel the presumption.

I think the circumstances brought out at the hearing beyond doubt compel a new trial. The stimulus for this opinion and the elaborate detailing of the circum-

stances is not due to any doubt as to what should be done but rather to furnish warning to government attorneys and defense counsel in general—but not defense counsel here in particular—to instruct carefully their witnesses in the future to prevent a recurrence of such a regrettable incident. It is my practice at the first recess of every criminal trial to admonish the jury in some such fashion as this: "Members of the Jury, I need not admonish you, but you are not to discuss this case with anyone at all, and it is better policy for you not to discuss it among yourselves at this time. Wait until all the evidence is in and then you can have your discussions. As I have respect for your integrity, I do not intend to instruct you further on this matter." Such instruction was given in this case.

■ The law, as the government concedes, is that where there is communication and social intercourse between a juror and a party or witness, a presumption of misconduct sufficient to vitiate the verdict arises. The only question here is whether the circumstances detailed at the hearing affirmatively indicate that no prejudice could result to the defendant. I turn now to a consideration of this question.

The parties have cited numerous authorities which each thinks support the respective positions. But, in cases of this kind, where so much depends on the total situation disclosed by the particular circumstances, analogous cases are of doubtful utility. The number of times Juror 7 and Flounders fraternized in the absence of previous acquaintance or any apparent mutual bond is sufficient to raise suspicious implications. This conclusion is enforced by the contradiction as to the subject matters discussed. Juror 7 stated unequivocally (and indeed he was more positive on this than any other testimony in the case) that railroading or railroad men were not discussed. I am satisfied from the testimony of Flounders that this subject was discussed and there is not the slightest doubt, I think, that Captain Thomas was specifically discussed. This contradiction under other circumstances and in other situations might not be significant, but in this case it is particularly significant because it was one of the very few things Juror 7 stated without equivocation. Moreover, and probably more pertinent, this contradiction must be considered in the light of the numerous repetitious statements of Juror 7 that they never discussed the particular case. These statements came from the juror on numerous occasions when they were not even remotely responsive to the questions put to him.

■ It is unnecessary to make a finding whether the case was actually discussed. It is sufficient that the discussion approached the subject matter of the case much more closely than the juror wished to admit, for I think it perfectly clear that railroading and railroad men were discussed. But even if this were not true, I think the circumstances detailed are sufficient to raise suspicious implications. The conviction of the defendant at bar is very important to the Pennsylvania Railroad; but defendant has the right, protected by the Bill of Rights, to an impartial trial. If the circumstances are suspicious I think that is sufficient to vitiate the verdict. Little v. United States, 10 Cir., 73 F.2d 861. It would be impossible in most cases by the very nature of things to prove actual misconduct, or that the case was discussed. Moreover, it is not only possible but in most cases it would be more effective to adopt a more subtle approach than making a direct "fix". Impressions created by favorable conversation might be just as effective. Now it must be conceded in this case that Flounders made a very favorable impression on Juror 7. What influences a particular juror necessarily must be vague and indefinite.

■ Finally, the government urges that in considering the circumstances the court should recognize that Flounders was an unimportant witness and further that there was sufficient evidence to convict. I could agree with both contentions as abstract propositions, but do not believe that they help the government here. The crucial inquiry is the influence on the juror and the importance of witness' testimony is irrelevant to that inquiry. I conclude that the circumstances disclosed at the hearing amply justify a new trial. A new trial should be ordered.