UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles CATALANO, Defendant-
Appellant.

No. 280, Docket 23974.

United States Court of Appeals
Second Circuit.

Argued March 5, 1956.

Decided March 19, 1956.

Stephen A. Fuschino, New York City, for defendant-appellant.

Leonard P. Moore, U. S. Atty., for Eastern District of New York, Brooklyn, N. Y. (Howard B. Gliedman, Frances T. Wolff, Asst. U. S. Attys., Brooklyn, N. Y., of Counsel), for appellee.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and GALSTON, District Judge.

GALSTON, District Judge.

The defendant was convicted on each of three counts which in substance charged him, together with one Kritsky, with the armed robbery of a branch of the Bank of The Manhattan Company, and the taking of over $24,000 in currency.

During the trial defendant's counsel approached the Bench and told the court in substance that he had received a phone call the night before from a person who refused to give his name, stating that he had knowledge that certain officers had discussed this case in the presence of jurors, and that he had heard something to the effect that Catalano was supposed to be worse than Willie Sutton. No further particulars were given by defendant's counsel. From the statement made, the court concluded that it was insufficient to warrant the court in conducting an examination of the jurors as requested by defendant. At a subsequent colloquy at the Bench, the court was informed by the attorney for the defendant Kritsky that a brother of Kritsky informed him that when the jury left the courtroom, Walter Kritsky was in the elevator with four or possibly five jurors, and that some person in the elevator said in effect that the defendant was worse than Willie Sutton. Again a request was made that the court conduct a hearing, and question Walter Kritsky and Juror No. 5 and Juror No. 6.

It may be observed that there was no representation that the unnamed two people, who were engaged in conversation in the elevator, had any connection with the Government or the prosecution of the case.

The jury was adequately cautioned by the judge not to discuss their case among themselves or with anyone else until it was finally submitted for verdict. Moreover, in his charge to the jury Judge Bruchhausen said:

"Your deliberation should be upon the evidence in this case, ignoring any information which may have come to your attention from outside sources."

Nothing in the stenographer's minutes discloses that appellant's rights were in the slightest degree prejudiced. We must be mindful of the fact that despite the admonitions of a trial judge to a jury not to give heed to any outside utterances, inevitably jurors do read in the daily newspapers, or hear over the radio, comments on the day's doings, if the case presented is of public interest.

Here we find, in the talk reported, nothing specific such as was before the court in Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654, which is heavily relied upon by the appellant. What took place in the cited case was after the jury had rendered its verdict. The matter brought to the attention of the trial court had specific reference to a communication of an unnamed person with a certain juror who became the foreman of the jury, and who indeed reported the incident to the judge. The rectial by the appellant in this case presents no such picture. Other cases cited by the defendant deal with actual tampering with jurors. See Stone v. United States, 6 Cir., 113 F.2d 70; United States v. Rakes, D.C., 74 F. Supp. 645; United States v. Marine, D.C., 84 F.Supp. 785.

Remmer v. United States went to the Supreme Court a second time, and in an opinion handed down March 5, 1956, 76 S.Ct. 425, it is again emphasized that specific extraneous influences were charged to have influenced a named juror.

In United States v. Sorcey, 7 Cir., 151 F.2d 899, 903, also relied upon by the defendant, the court had occasion to say:

"But, we must not permit the integrity of the jury to be assailed by mere suspicion and surmise; it is presumed that the jury will be true to their oath and conscientiously observe the instructions of the court * * *."

In that case communications of the bailiff with the jury were involved. Nothing like that is presented herein.

The judgment of conviction is affirmed.