[Crim. No. 13948.    Second Dist., Div. Four.    Sept. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BRYANT M. WASHBURN, Defendant and Appellant.

Jayme C. Billey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert H. Francis, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with grand theft (auto) in violation of Vehicle Code section 10851 (count I), and grand theft (auto) in violation of Penal Code section 487, subdivision 3 (count II). Five prior felony convictions were also alleged. Defendant entered a plea of "not guilty" and denied the prior convictions. Out of the presence of the jury defendant admitted all five prior convictions. The jury found defendant guilty of count II and not guilty of count I. Motion for new trial was denied; probation was denied; defendant was sentenced to state prison for the term prescribed by law. Defendant has appealed.

Defendant offered no evidence. The facts as they appear from the People's witnesses are as follows:

On November 24, 1965, Fred Bauersfeld, the owner of the National Car Rental franchise in Santa Barbara, received a telephone call from defendant concerning rental of a car. Defendant said his car was in the shop, that he needed a car for two days and possibly over the weekend, and that he wanted to get a California license. According to arrangements, Mr. Bergmann, the sales manager, drove defendant to the Motor Vehicle Department. Mr. Bergmann filled in parts of the rental contract, including defendant's name, address and driver's license number, a description of the vehicle, its vehicle and license numbers, and the rental rate. November 26th was the date that defendant said he would return the car and that date was placed on the contract as the return date. Receipt of a $35 deposit was acknowledged on the contract, and defendant and Mr. Bergmann signed the contract.

Mr. Bauersfeld later told defendant that the weekend rate was $15, and he wrote on the remarks section, "If rented over the weekend, give weekend rate of $15.00 for Saturday and Sunday." Defendant was supposed to call Mr. Bauersfeld on Friday afternoon if he wanted the car on the weekend. Mr. Bauersfeld filled in defendant's social security number, the reference "Hope Ranch Motel Manager" and telephone number. The rented car that defendant left with was a 1965 dark blue Ford Galaxie 500 which bore license number IQG 876 and serial number 5J64X 141746.

Defendant called on Friday and made arrangements to keep the car until 6 p.m. Sunday, November 28th, at which time Mr. Bauersfeld was to meet defendant at the agency office. Defendant never came. Several days later Mr. Bauersfeld called the Hope Ranch Motel and defendant was no longer there. On December 2d Mr. Bauersfeld filed a complaint.

Prior to November 1965, Donna Hamilton, supervisor of the Hope Ranch Motel, placed an ad in the paper for a married couple to manage the apartment. A man (the defendant) and a woman were hired. When defendant arrived he had an old light colored car, later a tan 1965 Thunderbird, and shortly after a bluish-green Ford Galaxie, which he said he rented from National Rentals for four days. Mrs. Hamilton released defendant from employment. She asked defendant what he was going to do about the car, he said he was going to return it, and later he said he did return it. Defendant left the motel.

On February 12, 1966, Mrs. Marion Clausen rented a house in Portland, Oregon, for a month's term, to defendant and a woman she understood to be his wife. Defendant left before the month was up and Mrs. Clausen found a California license plate number IQG 876. Mrs. Clausen called the police twice about the license and the third time she called the police they told her she could throw it away. Defendant had driven away in a late model dark blue car.

On May 28, 1966, Sergeant Ralph Benson of the Utah Highway Patrol was conducting a routine driver's license and registration check in which all vehicles were being stopped at Crescent Junction. Sergeant Benson saw a dark blue Ford coming at a high rate of speed; it went beyond the stop point and then it came to a stop. Defendant stated his name was James David Kelly, that he did not have a driver's license, and he presented Sergeant Benson with a social security card. Sergeant Benson asked for and was shown the registration certificate. It bore the serial number B3RG159537. Upon checking the car, he saw that the license and tab numbers matched those on the registration certificate. However, Sergeant Benson noticed that the first figure in the serial number on the registration certificate was "3" and he knew that, since the car was a 1965 Ford, the first figure should be a "5." The discrepancy indicated to the officer that the registration certificate did not belong to the car which defendant was driving.

Sergeant Benson told defendant that he was under arrest for not having an operator's license and for improper registration. Sergeant Benson advised defendant of his rights and defendant said he understood them. Sergeant Benson asked defendant to open the door so he could check the vehicle identification number, which he then saw was 5J64X141746, and not B3RG159537 as the registration certificate had indicated.

Sergeant Benson turned defendant, and the woman who was with him, over to the deputy sheriff in Moab. That night Sergeant Benson again advised defendant of his rights, and he told defendant he was going to call the FBI because he suspected the car was stolen. Defendant said it was not stolen and that he rented the car from National Car Rental in Santa Barbara, California. Defendant said he had taken the Oregon plates and registration from a 1953 Ford on a street in Portland, explaining that the California plates had expired. The car was returned 28 weeks later.

## I

■ Defendant argues that the court erred in not declaring a mistrial on the ground of misconduct of the jurors. One of the jurors took one of the People's witnesses (Mrs. Clausen) for a drive to the city of Ventura, to the Mission, to the boat harbor, and to J. C. Penney's department store to shop after court recessed. Clearly this association between a witness and a juror was misconduct. (*People* v. *Denton* (1947) 78 Cal.App.2d 540, 550-551 [178 P.2d 524].) The defendant also argues that this misconduct is reversible, citing *Parker* v. *Gladden* (1966) 385 U.S. 363 [17 L.Ed.2d 420, 87 S.Ct. 468] and *United States* v. *Marine* (Del. 1949) 84 F.Supp. 785. However, the facts of the *Marine* and *Gladden* cases are distinguishable from the facts in the case before us. In *Gladden* the bailiff told the jury that defendant was guilty and the court held that the bailiff's conduct involved such a probability of prejudice that due process was lacking. In the *Marine* case the defendant was a railroad baggage man. In that case there was not only communication between a juror and a witness (who was an employee of the railroad) but there was also some testimony to the effect that they had discussed railroad matters and certain railroad men. The *Marine* court said there is a presumption of misconduct in a case such as this and if the circumstances are suspicious that is sufficient to vitiate the verdict. In the case at bench the conduct was clearly improper, but there were no suspicious circumstances or conduct that could have prejudiced defendant. Mrs. Clausen had been "more or less" talking to the jurors expressing an appreciation of Ventura and a desire to see the Mission. Mr. Bischof offered his services, took her to the Mission, to his own church, and several other places. They never discussed defendant, they discussed religion mostly, and the only thing they ever mentioned about the trial was that the court paid for Mrs. Clausen's trip from Oregon. In short, the conversation in the case at bench in no way related to matters even peripherally affecting the trial.

However, defendant argues that the juror stated that, as a result of the conversations during the after-court trip, he had become "impressed" with Mrs. Clausen, and that it should, therefore, be inferred that he had formed a belief in her credibility. But the facts to which Mrs. Clausen testified were uncontradicted, they were, in effect, admitted by defendant in his statements to the police after his arrest, and they were of relatively little significance in determining the fundamental

issues of the trial. We cannot say that the trial court was wrong in deciding that no prejudice to the defendant had been shown.[1]

## II

Defendant alleges that the testimony of Sergeant Benson was the result of evidence obtained by an unlawful search and seizure. Defendant cites the cases of *Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497 [193 P.2d 470], and *People* v. *Gale* (1956) 46 Cal.2d 253 [294 P.2d 13], for the proposition that it is unlawful to stop individuals at roadblocks and make a search without reasonable cause to believe the vehicles carried contraband, or that the citizens in them violated the law. While this is true as a general proposition and the police cannot set up roadblocks for the purpose of searching vehicles when they do not have probable cause to search, this ruling does not preclude the police stopping vehicles for the purpose of enforcing the state statute requiring that drivers be licensed. In *People* v. *Porter* (1961) 196 Cal.App.2d 684, at p. 686 [16 Cal.Rptr. 886], the court said: ''It must be remembered that the routine stopping of a motorist for identification and checking for ownership and compliance of the vehicle with the law is quite a different matter from a search for contraband.''

The court in *Lipton* v. *United States* (9th Cir. 1965) 348 F.2d 591, similarly held that a peace officer has the right to stop a motorist to inquire about his license, although an officer may not do so as a ruse for an intended search. Just as the *Lipton* court was satisfied that there was no improper objective involved in stopping that defendant to see his license, we are also satisfied that the police in the case at bench acted properly and in pursuit of a lawful objective in stopping defendant and asking to see his license.

## III

Defendant's other arguments are all variations on a single theme, based on the fact that the trial court and its clerk erroneously used the word ''larceny'' in places where, under the California Law, the statutory term ''theft'' was the appropriate word. We find that the contentions made are either not properly before us on this appeal or are without legal basis, or both.

---

[1]Compare *People* v. *Denton, supra* (1947) 78 Cal.App.2d 540, 550-551, where the court held that the action of a constable, a witness for the prosecution, in driving a juror home, although misconduct, was not prejudicial.

## A

■ Defendant asserts that the evidence at the preliminary hearing was insufficient to justify binding him over for trial in the superior court. But no record of the evidence presented at the preliminary examination is before us on this appeal[2] and, in addition, it is settled that the objection now urged can be made only by way of a motion for dismissal under section 995 of the Penal Code (Pen. Code, § 996; *In re Berry* (1955) 43 Cal.2d 838, 844 [279 P.2d 18]; *In re Van Brunt* (1966) 242 Cal.App.2d 96, 106 [51 Cal.Rptr. 136]; *People* v. *Evans* (1960) 185 Cal.App.2d 331, 334 [8 Cal.Rptr. 410]). No such motion was made in the case at bench.

## B

■ The form of verdict given to the jury, and returned by them, used the word "larceny." The verdict, as returned, and on which the judgment rests, reads as follows: "We, the Jury in the above-entitled action, hereby find the Defendant, BRYANT M. WASHBURN, guilty of the crime of LARCENY, in violation of Section 487.3, Penal Code of the State of California, as charged in Count Two of the Information."

Seizing on this error, defendant now argues (as we understand him) that he was convicted of common law larceny—an offense, he argues, neither charged nor supported by the evidence. We do not place this much significance on the semantics. The information, in count II, properly charged defendant with grand theft; in instructing the jury as to that count, the court properly defined the elements of theft, but also, in one phrase, erroneously denominated the crime as "larceny."[3] The jury could not have been confused, and its verdict, with the express reference to count II, must have been a finding of theft as therein charged and as defined to them by the court.[4]

---

[2]The transcript of the preliminary examination does appear, physically, as part of the clerk's transcript on appeal. However, not having been before the trial court, it had no place in that transcript and it is not a matter that we can lawfully consider here.

[3]After properly defining theft by trick and device and embezzlement, the trial court instructed the jury as follows: "If you find beyond a reasonable doubt that a theft of the automobile was committed by trick and device or by embezzlement as those crimes are defined in these instructions, then you may find defendant guilty of theft although those two crimes are not specifically charged therein, since both theft by trick and device and by embezzlement are forms of larceny."

[4]The evidence, in fact, would have supported a verdict of guilt of the form of theft that was common law larceny—since defendant's conduct would have supported the inference that he had, from the beginning, an

## C

Also seizing on the use of the word "larceny" defendant argues that he was not guilty of that crime because he gained possession of the car by consent. But, as we have said, defendant was charged with "theft"—an offense which, in this state includes not only common law larceny but larceny by trick and device and embezzlement. (Pen. Code, § 484.) As we have pointed out, the trial court properly instructed the jury as to the meaning of "theft" as used in the information. It was of that crime that he was convicted.[5]

## D

Finally, defendant objects that the jury should not have been instructed in the terms of section 10855 of the Vehicle Code[6] since he was not charged with a violation of that section. But section 10855 does not create a substantive crime, but merely establishes a rule of evidence to be applied in cases where embezzlement is charged. Since the information charged embezzlement (as included in the term theft) and the evidence was consistent with that theory, it was not only proper but necessary that the jury be told of the statutory presumption expressed in section 10855.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

---

intent to keep the vehicle permanently—the "fraud in the factum" familiar to all first year law students. But the jury was not instructed on that theory and it cannot here be used to support the verdict rendered on other instructions embodying other theories of guilt also supported by the record.

[5]We here do no more than to interpret the verdict in conformity with the policy of section 490a of the Penal Code, which reads as follows: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor."

[6]That section reads: "Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle."