## MILLARD v. UNITED STATES.
### No. 11183.

Circuit Court of Appeals, Fifth Circuit.
March 29, 1945.

Rehearing Denied May 4, 1945.

Writ of Certiorari Denied June 18, 1945.
See 65 S.Ct. 1578.

Edmund G. Burke and P. M. Flanagan, both of New Orleans, La., for appellant.

Edw. J. Boyle, Asst. U. S. Atty., of New Orleans, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The prosecution brought under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., as amended, was on an information in nineteen counts. Defendant's demurrer and motion to quash were overruled, and there was a trial and a verdict finding defendant guilty on Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 17, 18 and 19, and not guilty on Counts 1, 11, 12, 14, 15 and 16. Sentenced on the verdict to pay a fine of $200 on each of Counts 2 to 10, 13, 17, 18 and 19, and to imprisonment until payment of the fines, and also to serve five consecutive one-year sentences, the first to commence upon termination of imprisonment for non-payment of fines, defendant has appealed.[1] Here, making no claim of error on the trial, defendant seeks a reversal because of the overruling of his demurrer and motion to quash, the refusal of his motion to withdraw his plea of not guilty and permit him to file a motion for bill of particulars, a demurrer and a motion to quash the amended bill of information. In addition he claims that the sentence was invalid as imposing cruel and unusual punishment.

The points raised by the demurrer and the motion to quash are in substance the same, (1) that there was duplicity in joining in one count two or more distinct offenses, (2) that each count is defective in that the facts stated are insufficient to constitute a crime against the United States. A careful analysis of the information discloses nothing of substance in these points. Under the settled rule of decision in the federal courts, an objection to an information or indictment, in order to present reversible error, must have something of substance in it.[2] It is not sufficient to point to some imperfection in language, some technical deficiency in style or arrangement.[3] Surplusage will be dis-

---

[1] Sentenced to pay a fine of $200 on each of Counts 2 to 10, 13, 17, 18 and 19, and to be imprisoned until payment of the fine or until otherwise discharged as provided by law, defendant was also sentenced to a term of imprisonment for one year on Counts 2 and 13, "said sentence to commence only at and from the termination of the commitment so relating to the said imposed fines", and to additional periods of one year on count three, one year on counts 8, 9, and 10, one year on counts 17, 18 and 19, and one year on counts 4, 5, 6 and 7, the sentences to run consecutively, each to commence after the expiration of the one preceding.

[2] United States v. Wagoner, 7 Cir., 143 F.2d 1; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

[3] Nearly thirty years ago in Whitehead v. United States, 5 Cir., 245 F. 385, 390, this court pointed this out. There speaking of a highly technical attack upon an indictment, the court said:

"Most of the attacks upon the indictment are apparently predicated upon the postulate that an indictment requires a character of English composition entirely different from that used for any other purpose, and that, in a determination of its meaning, all the ordinary rules of interpretation are abrogated. With reference to every other instrument which comes before a court, an effort is made to ascertain the meaning intended by the writer. As to an indictment it is insisted that every possible effort should be made to divest it of meaning. A word too many avoids it; a word omitted is fatal. If a word or clause may be given a possible meaning antagonistic to another word or clause, that meaning must be given, rather than an obvious meaning which would be consistent.

"Even when perversion of the language is not undertaken, perfection of expression is insisted upon. Many English words have more meanings than one, and a writer whose thoughts are entirely clear and logical must be content sometimes to have a question raised as to the meaning of the language in which he undertakes to give them expression. There is little in literature beyond the reach of the hypercritical. The Lord's

regarded.[4] An indictment or information will not be held bad on the ground of duplicity if the words employed present to the common understanding a single charge.[5] If the allegations are sufficient to reasonably apprise the defendant of the nature of the charge against him and to furnish a basis for a plea of former jeopardy, the indictment or information is sufficient to support a conviction. Measured by these standards, the information here was clearly sufficient. Neither was it error to deny appellant's motion to withdraw his plea of not guilty made on the day of the trial to permit him to file demurrers and a motion for a bill of particulars to the amended information. These were matters addressed to the discretion of the trial judge [6] and no abuse is shown. The amended information was the same in substance as the original information, and just as the original information was not, neither was the amended information, vulnerable to a demurrer or a motion to quash.

The point made against the validity of the sentence is that in deferring the beginning of the imprisonment terms until after release from imprisonment for nonpayment of fines, the court inflicted cruel and unusual punishment upon the defendant. The argument is that the fines imposed were many and heavy, that defendant might not be able either to raise the money or to make the oath required by Section 641, Title 18, U.S.C.A., as humanely amended June 29, 1940, and thus his prison sentence would be indefinitely extended and prolonged.

We agree with the defendant that the sentence in seeking to use the pressure of the overhanging five years as a collector of the fines was unusual,—no other case has been called to our attention where such an effort was made. We cannot, however, say that the punishment was cruel within the constitutional prohibition since the aggregate of the sentence did not exceed that which could have been imposed, indeed fell far short of that aggregate. We think, though, that the provision of the sentence that the first imprisonment term shall not commence until the imprisonment for non-payment of the fine has in some way come to an end is too indefinite and depends upon too many contingencies to be valid and effective. It is true that by exact specification as to when each term shall begin, in appearance it conforms to the rule that where sentences are imposed on verdicts of guilty on several counts of the same indictment in the same court, unless the sentences so imposed are to run concurrently, there must be some definite specific provision that the sentences shall run consecutively, specifying the order of sequence.[7] In substance, however, the effort to make the first imprisonment term commence after the fortuitous ending of the imprisonment for nonpayment of fine fails in specificity, and the sentence and commitment must be read as requiring the service of the first prison sentence to commence from the date on which the defendant is received at the penitentiary, reformatory or jail for the service of his sentence.[8] The judgment is affirmed.

---

Prayer and the Commandments have not escaped. One who can find 85 objections to the indictment in this case could probably suggest improvements in the Gettysburg speech. It is not quite reasonable to demand of prosecuting attorneys that they should show a talent for lucid and accurate expression, not expected of any other person. We shall decline to give aid in the maintenance of rules so manifestly in conflict with good sense, and so potently subversive of efficient administration of the law. The time of a court may be more profitably used than in the perpetuation of absurdities."

[4] Anderson v. United States, 2 Cir., 294 F. 593; Johnson v. Biddle, 8 Cir., 12 F.2d 366.

[5] Blum v. United States, 6 Cir., 46 F.2d 850.

[6] Callahan v. United States, 10 Cir., 35 F.2d 633.

[7] Howard v. United States, 6 Cir., 75 F. 986, 34 L.R.A. 509; United States v. Patterson, C.C., 29 F. 775; Boyd v. Archer, 9 Cir., 42 F.2d 43, 70 A.L.R. 1507; Puccinelli v. United States, 9 Cir., 5 F.2d 6; United States v. Daugherty, 269 U.S. 360, 362, 46 S.Ct. 156, 70 L. Ed. 309.

[8] Title 18 U.S.C.A. § 709a.