### JOHNSON v. UNITED STATES.
### No. 14437.

United States Court of Appeals
Fifth Circuit.
Sept. 17, 1953.

Hutcheson, Chief Judge, dissented.

Ellis Stuart Rubin, Miami, Fla., for appellant.

Fred Botts, Asst. U. S. Atty., Miami, Fla., Herbert S. Phillips, U. S. Atty., Tampa, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

Appellant was indicted, tried and convicted on a single count charging him with violating 18 U.S.C. § 2314,[1] in that he transported certain specifically designated and described articles of jewelry having a value of more than $5,000 from Miami, Florida to Havana, Cuba, on April 18, 1952, and that he knew that the jewelry "had therefore (sic) been stolen, converted or taken by fraud." Since there is no contention that the evidence was not sufficient to sustain the verdict, we do not recite it in detail. For present purposes it is sufficient to say that the jury was justified in finding that appellant acquired possession of the jewelry from Daniel Richter by means of a scheme designed to lead the latter to believe that his, Richter's, son had been kidnapped. The jewelry was placed in a locker-box at the local bus terminal by Richter, as he was directed to do by appellant, to secure the release and safe return of the Richter child. After removing the jewelry from the locker-box appellant transported it from Miami to Havana. He was there arrested by the Cuban authorities two days after his arrival and was subsequently deported to the United States as an undesirable alien. He was induced to deliver the jewelry to the Cuban Secret Police by promises that they would divide its proceeds with him. After he delivered it to them, they arrested him and incarcerated him in the local jail. He was returned to Miami accompanied by members of the Cuban Secret Police and upon his arrival was placed under arrest by the Chief of Detectives of the Miami Police Department. The jewelry was delivered to the detective by the Cuban police. Appellant was acquitted after trial in the State court on the charge of kidnapping. Thereafter, the present trial was had and a sentence of nine years was imposed. Appellant has elected to commence service of the sentence pending this appeal.

■ Prior to trial appellant filed a motion to dismiss the indictment upon stated grounds. The grounds upon which he now relies are that the indictment failed to apprise him of the offense with which he was charged and to sufficiently protect him from a future indictment on the same charge. Formal parts omitted, the indictment is set forth in the margin.[2] The indictment did not

1. "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or * * * Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. "The Grand Jury charges:
"On, to-wit: April 18, 1952, at Miami, Dade County, Florida, in the Southern District of Florida.
"Charles Wesley Johnson, the defendant herein, unlawfully did knowingly transport in foreign commerce, to-wit: from the City of Miami, Dade County, Florida, in the Southern District of Florida to the City of Havana in the Republic of Cuba, certain merchandise described as follows:
"1. One ladies' diamond solitaire finger ring containing one diamond about 3.99 carats in size and 6 small diamonds, all in platinum mounting.
"2. One ladies' platinum diamond finger ring containing one diamond about 2.97 carats in size, one diamond about 3 carats in size and 10 small diamonds, all in platinum mounting.
"3. One mens' diamond finger ring about 3.98 carats in size, mounted ·in plain 14 karat white gold mounting.
"4. One diamond and onyx bar pin containing about 27 small diamonds and about 52 small onyx.
"5. One Tiffany and Company diamond combination necklace, pendent and bracelet set containing one pear shaped diamond of approximately 1¼ carat in size, about 8 baguette diamonds, about 157 small round diamonds and in the necklace portion about 502 small full cut diamonds,
a further description of said merchandise being to the grand jurors unknown, which said merchandise was of a value of more than Five Thousand ($5,000.00) Dollars, to-wit: of a value of Twenty Thousand ($20,000.00) Dollars, which said property had therefore been stolen, converted or taken by fraud as he, the said defendant at the time of transporting said merchandise as aforesaid, well knew."

charge appellant with stealing, converting or taking the jewelry by fraud. The manner in which the property was unlawfully taken from its possessor is a subsidiary element of the offense. By enacting the statute which appellant stands convicted of violating, Congress intended to prohibit the channels of interstate and foreign commerce from being employed to evade and escape State detection and prosecution of certain criminal offenses committed within its boundaries. Appellant was charged with transporting the jewelry in foreign commerce with knowledge that it *had been* "stolen, converted or taken by fraud." The quoted words relate to the quality of the property he transported and not to the manner in which he acquired it. For this reason the cases cited and relied upon by appellant in support of his contention that the court erred in overruling his motion to dismiss the indictment are inapposite. Those cases [3] hold generally that if a statute denounces several things as crime, or creates only one offense but states more than one way in which it may be committed, an indictment may, in a single count, charge violation of the statute in any or all of the ways stated therein, provided that the various ways by which the offense may be committed are alleged conjunctively rather than disjunctively, or alternatively. This rule, however, is not applicable to the present case, although it would not have been fatal to the indictment if the elements had been alleged conjunctively.

■■ The gravamen of the offense prohibited by 18 U.S.C. § 2314 is the transportation in interstate or foreign commerce of goods with knowledge that they have been secured by the unlawful means referred to in the statute. It is immaterial whether the accused is guilty of any offense in connection with the primary wrongful taking of the goods, nor

is it significant how the accused acquired possession of the goods, except that this may be shown in order to prove his knowledge of their character as being stolen, converted or taken by fraud. To sustain a conviction under this statute it is necessary to prove that the accused transported the goods in interstate or foreign commerce, that the value of the goods so transported was $5,000 or more and that he knew they had either been stolen, converted or taken by fraud. These are the essential elements of the crime. The indictment charged these elements with particularity.

■ An indictment must contain a plain, concise and definite statement of the essential facts constituting the offense charged.[4] The purpose of an indictment is to apprise the accused of the crime charged against him with such reasonable certainty as will enable him to make his defense and avail himself of his conviction or acquittal for protection against another prosecution for the same offense. Thus, as stated by the Supreme Court in Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L. Ed. 861:

> "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

■ Appellant's primary argument is predicated upon the contention that his defense was embarrassed by the use of the disjunctive "or" rather than the conjunctive "and" which he claims

**3.** O'Neill v. United States, 8 Cir., 19 F.2d 322; Poffenbarger v. United States, 8 Cir., 20 F.2d 42; Troutman v. United States, 10 Cir., 100 F.2d 628; Pines v. United States, 8 Cir., 123 F.2d 825;

Price v. United States, 5 Cir., 150 F. 2d 283; District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 163 F.2d 833.

**4.** Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A.

necessitated his preparing three different defenses to the single count of the indictment. Obviously, he would have been in no different position if the conjunctive had been used, since proof of his knowledge that the jewelry had either been stolen, converted or taken by fraud at the time he transported it would sustain a conviction. There can be no valid contention that appellant's defense was embarrassed or that he was surprised by the evidence offered against him at the trial merely because the indictment alleged the prohibitive character of the goods in the disjunctive rather than in the conjunctive. The indictment did not charge appellant in the alternative with having committed one or another of several offenses. He was charged with only one offense. This evidences our rejection of his contention that the court erred in overruling his motion to compel the Government to elect upon which allegation of the indictment it would proceed to trial. We think the indictment alleged the essential ingredients of the offense charged with sufficient certainty and did not infringe upon appellant's right to be informed of the crime charged against him.[5] Likewise, it is sufficiently definite so that either a conviction or an acquittal could be pleaded in bar to a subsequent prosecution for the same cause.

It is contended that the inclusion of the word "therefore" in the indictment between the words "had" and "been" immediately preceding "stolen, converted or taken by fraud"[6] rendered the indictment fatally defective because it failed to state when the jewelry was unlawfully obtained. Appellant admits that as used in the indictment the word has no meaning, but urges that it makes the indictment uncertain and ambiguous. It is obvious that the word "thereto-fore" was intended to be used instead of "therefore",[7] however, we need not consider whether or not the end result was a clerical or typographical error. It was not necessary that the indictment allege when the jewelry was illegally obtained or when it came into the defendant's possession. It is sufficient that it be charged that the defendant knew that it *had been* so obtained at the time he transported it. The indictment meets this requirement. Appellant also urges that the court erred in striking this word from the indictment upon motion of the Government made at the close of its evidence, insisting that the result was to amend the indictment in a substantial way. He argues that it completely changed or confused the time element as to when the jewelry was unlawfully taken with relation to when it was transported. We do not think so. As it appeared in the indictment, the word "therefore" was absolutely devoid of meaning. It neither added to, nor subtracted from, the meaning of the phrase in which it appeared or the context of the indictment as a whole. In short, it was surplusage, the striking of which did not affect the substance of the indictment and in no way prejudiced the rights of the defendant.[8]

Appellant timely filed a motion for a bill of particulars requesting, among other things, that he be informed of the "details which compose the vital elements of fraud" alleged in the indictment. The overruling of this motion is assigned as error. The Government should not be compelled by a bill of particulars to give a detailed disclosure of its evidence, as would have been required by compliance with the motion. Pines v. United States, 8 Cir., 123 F.2d 825, 828. Furthermore, there is nothing in the record to indicate that appellant was sur-

5. Cf. Millard v. United States, 5 Cir., 148 F.2d 154; Norris v. United States, 5 Cir., 152 F.2d 808; Myles v. United States, 5 Cir., 170 F.2d 443.

6. Footnote 2, supra.

7. See 62 Stat. 683, 806.

8. Johnson v. United States, 5 Cir., 124 F. 2d 101; United States v. Krepper, 3 Cir., 159 F.2d 958, 970; Williams v. United States, 5 Cir., 179 F.2d 656, 659; Edgerton v. United States, 9 Cir., 143 F.2d 697, 700.

prised or prejudiced by the action of the court in overruling the motion. The granting or denial of a bill of particulars rests within the sound discretion of the trial court, and in the absence of abuse or prejudice, its ruling will not be disturbed on appeal. No abuse is shown in this case. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545.

■ Before the trial a motion to suppress evidence was made and was denied by the court with leave to renew. It was renewed at the trial and again denied. Appellant complains of this and of the admission in evidence of the various items of jewelry which were taken from him by the Cuban police. This claim of error is based upon the contentions that: (1) the Cuban police acquired possession of the jewelry by means of an unlawful search and seizure; (2) they offered appellant promise of reward and hope of escape if he would deliver the jewelry to them, and (3) the Cuban officer who delivered the jewelry to the Miami police was not called as a witness.

One of the Cuban police testified that at the time he entered appellant's hotel room and arrested him a warrant for his arrest and a search warrant had been issued. He further stated that he knew appellant was wanted by the Miami police on a kidnapping charge. A search of the room was made but the jewelry was not found. After conversing with the officers, appellant removed a ring from his mouth and gave it to one of them. Upon being promised by the officers that all would go well with him if he would produce the rest of the jewelry and that the officers would sell it and divide the proceeds with him, appellant led them to another hotel. There he secured the jewelry and delivered it to the officers. If it be conceded that the search of appellant's room was unlawful, which we do not decide, since it did not result in the disclosure and seizure of the jewelry, it does not establish a basis for the suppression of the evidence.

■ Moreover, and controlling here, all of the alleged unlawful conduct utilized to induce appellant to produce the jewelry and to deliver it to his captors was initiated and accomplished by the Cuban police, apparently in an effort to assist the Miami police in recovering the jewelry and bringing about appellant's capture on the State charge. There is no evidence that federal officers participated in any way in the activities complained of, that they were working in concert with the Miami or the local officers, or that they even knew of the alleged "seizure", or acquisition of the jewelry, by the Cuban officers until after it transpired. It follows that whether the conduct of the Cuban officers was lawful or not the evidence was admissible against appellant. Evidence secured through unlawful conduct on the part of State or local officers is admissible in a federal prosecution, provided such officers were not acting directly or indirectly for the United States. This rule is applicable to the present case. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; Bryant v. United States, 5 Cir., 120 F.2d 483; Wheatley v. United States, 4 Cir., 159 F. 2d 599; United States v. Butler, 10 Cir., 156 F.2d 897, 898, and cases cited.

■ There was no serious dispute as to the identity of the jewelry or as to whether the jewelry offered in evidence was the same jewelry which was unlawfully transported. A witness for the Government testified that the jewelry was delivered to him by the Chief of the Secret Police of Cuba at the police station in Miami. It was identified by the several witnesses who had seen it in appellant's possession, including the Cuban officers who arrested him. Thus, there is no merit to the contention that the Government should have been required to prove the identity of the jewelry by the officer who delivered it to the Miami police.

■ It is further asserted that the court erred in permitting the Government to recall the defendant, who tes-

ified as a witness in his own behalf, for further cross-examination after the defense had rested and "in allowing the Government to misrepresent testimony to be elicited from a surprise witness who subsequently refused to testify." The "surprise" witness referred to, Antoine Felise, by whose testimony the Government intended to impeach that of the defendant, refused to testify on the grounds that his testimony might tend to incriminate him. The court instructed the jury to disregard all that had transpired with respect to this witness and offered to strike from the record the cross-examination of the defendant having reference to Felise. This offer was rejected. When the defendant took the witness stand he became subject to cross-examination in the same manner and to the same extent as any other witness and, within the discretion of the trial court, was subject to being recalled for further cross-examination after he had rested his case. The order in which evidence is to be received, the recalling of witnesses to the witness stand under circumstances present here and the acceptance or rejection of rebuttal testimony are matters which are necessarily committed to the broad discretion of the trial court, the exercise of which will not be disturbed upon appeal in the absence of a clear showing of abuse. Under the facts disclosed by the record, we are unable to say that the court abused its discretion in the matters complained of.

■■ Richter testified that while he was taking the jewelry to the bus terminal he thought he heard footsteps behind him. He glanced to his left toward a shop window and there saw the reflection of a man who resembled the defendant walking behind him. Counsel for appellant moved the court to permit the jury to view the scene in question. After all the evidence had been received, counsel for the Government made a similar motion. The motion was granted

and the jury was taken to the scene testified to by Richter. Counsel were permitted to accompany the jury.

While the jury was at the scene one of the Government witnesses, whose presence there is not explained by the record, was asked to, and did, purchase a package of cigarettes for one of the jurors. Also, according to his testimony, he said to one of the jurors, "those are diagonal windows", or, according to defendant's counsel, "Notice how these windows face?" He was immediately admonished to desist from saying anything further. Based upon this incident, appellant moved for a mistrial. He now insists that the court abused its discretion in overruling the motion.

When the incident was brought to the attention of the trial court a thorough inquiry was made by it to determine exactly what had occurred. Testimony of the offending witness was heard and counsel were given an opportunity to give their respective versions of what had happened in their presence. After hearing the testimony, the court overruled the motion for a mistrial, but carefully instructed the jury to dismiss the incident from their minds.

We recognize the rule that private communications between jurors and third persons, or witnesses, relative to the case on trial are absolutely forbidden and are presumed to be prejudicial.[9] However, this is a rebuttable presumption which may be overcome by a showing that such communications were harmless and did not in fact prejudice the rights of the defendant. The jury was present at the scene for the specific purpose of viewing the windows which had been referred to in the testimony. There was absolutely no dispute as to where they were located or as to their physical characteristics. The witness did no more than call the attention of a juror to something which was readily apparent to him; something which he had journeyed to the scene to observe.

9. Mattox v. United States, 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 133 F.2d 522; Ryan v. United States, 89 U.S.App.D.C. 328, 191 F.2d 779, and cases cited.

Although we do not approve of the presence of the witness at the scene or of his conduct while there, we think it was harmless and in no way affected or prejudiced the right of the defendant to a fair and impartial consideration of his case by the jury.

We find no reversible error in the record. The judgment appealed from is affirmed.

Judgment affirmed.

HUTCHESON, Chief Judge (dissenting).

Of the clear opinion; that appellant's motion to dismiss the indictment because it alleged disjunctively instead of conjunctively that the property in question "had been stolen, converted or taken by fraud" was well taken; and that the indictment should have been dismissed on that ground I dissent from the judgment of affirmance.

The majority opinion concedes that if appellant had been charged with stealing, converting or taking the jewelry the motion to dismiss should, under the authorities cited in note three, have been sustained. The majority, by a process of reasoning however which seems fallacious to me, reaches the conclusion that the rule which would admittedly apply if appellant had been indicted as the taker does not apply here because he is charged with transportation of the property after it had been taken and what was an essential element in the offense if he had been the taker, the manner in which it was taken, becomes to quote from the majority opinion "a subsidiary element of the offense."

Because I am unfamiliar with this use of the term subsidiary in connection with the elements of an offense, I am not sure that I understand the meaning and significance of the word when so used. I suppose though it is used in contradistinction to essential to mean that it is an unessential element of the offense charged.

If I am correct in this we are presented with what seems to me to be quite an anomaly in the law of criminal pleading that what would be an essential element of the offense if the taker had been charged with the offense of taking ceases to be an essential element when the taker is not charged but only the transporter is.

With the greatest deference to the contrary opinion of my brothers the conclusion on which it rests seems to be a triumph of form over substance, of technicality over sound reason.

To recapitulate, to my brothers the offense denounced by the statute, transporting in foreign commerce property which had theretofore been stolen, converted or taken by fraud as he at the time of transporting said merchandise as aforesaid well knew consists of two elements, one the transportation, and two, the unlawful taking of the property, these two elements stand in the order of principal and subsidiary and only the principal element transportation need be alleged and proven.

To me both elements are essential. Both must be properly alleged and proven.

For the failure to properly allege the element of unlawful taking, I think that the motion to dismiss should have been sustained and that because it was not the judgment should be reversed. I, therefore, dissent from the opinion and judgment of affirmance.