**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jessie Kenneth McKINNEY, Defendant-Appellant.**

**No. 27634.**

United States Court of Appeals, Fifth Circuit.

On Rehearing Nov. 10, 1970.

Certiorari Denied Feb. 22, 1971.

See 91 S.Ct. 910.

Cread L. Ray, Jr. (court-appointed), Ben Z. Grant, Marshall, Tex., for defendant-appellant.

Carl R. Roth, Asst. U. S. Atty., Beaumont, Tex., Kirby W. Patterson, Atty., Criminal Section, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee; Beatrice Rosenberg, Atty., U. S. Dept. of Justice, Washington, D. C., Roby Hadden, U. S. Atty., Tyler, Tex., (for rehearing only).

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

## ON PETITION FOR REHEARING

RIVES, Circuit Judge:

Upon further consideration, I am convinced that the district judge did not abuse his discretion either upon the voir dire examination of the jurors or in denying McKinney's motion for new trial, and, hence, that the judgment of conviction should be affirmed. The most cogent reason for my change of view is that I have become convinced that the evidence does not admit of the slightest doubt of McKinney's guilt.

Only six witnesses were examined at the trial, all introduced by the Government. One was president of the burglarized bank, who testified that at the time of the breaking and entry the deposits of the bank were insured by the Federal Deposit Insurance Corporation; that a burglar alarm had been installed on the day preceding the burglary; that he closed the bank at about 5:00 P.M. on Thanksgiving eve, November 23, 1965, and went to his home about two and a half blocks from the bank; that about seven o'clock the next morning a phone call informed him that the alarm was going off. He continued, "I took off for the bank as quickly as I could * * *. The alarm was still going off. I could hear it when I got out my back door * * * when [I] got there * * * I found the back door jimmied open. I went in and there was an inner wooden door which was jimmied open. We kept it locked. * * * after I got inside I found a stool and a secretary's chair sitting in front of the big money vault and part of the vault door had been peeled, part of the steel had been knocked out and a hole knocked in it, one piece shoved back. Then, on the right hand side of the door it had been hit and part of the paneling was cracked and the knobs, I found the knobs knocked off."

Two of the witnesses were a man and his wife who operated a rental camp on a lake near the bank. On Sunday evening preceding the Wednesday night on which the bank was burglarized, they had rented a "mobile home" to two men who were accompanied by two women and a baby. The men had paid a week's rent in advance, but on the following Thursday morning the witnesses discovered that their guests had departed, apparently in some haste. "[T]he lights were burning in every room in the mobile home and everything was kind of disturbed in there; a pair of shoes and some socks were left on the floor and a toy dog, and there was no one in there and all the doors of the refrigerator— one of the doors was left open and the freezer compartment to the refrigerator was full of steaks and all kinds of meat and a large hen * * * but the suitcases were all gone and all of the clothes were gone * * *." The man was able to identify McKinney and his woman companion. His wife identified the woman.

Two of the witnesses were the girl friends and traveling companions of McKinney. They testified that they rode with McKinney and his co-defendant Nix to a place near the bank and waited in the car; that the two men took tools from the car, saying that they were going to rob the bank; that later the men came running back, saying that the burglar alarm had gone off. The remaining witness, Nix, who had pleaded guilty prior to McKinney's trial, attempted to exonerate McKinney and to take full responsibility for the crime.

Before the district judge ruled on McKinney's motion for new trial, Nix had recanted his testimony and had pleaded guilty to perjury. Thus, when he denied the motion for new trial, the district judge knew that there was overwhelming evidence of McKinney's guilt and absolutely no evidence of his innocence.

The voir dire examination revealed that several members of the venire had read newspaper articles about the crime. Nonetheless, McKinney's counsel did not seek any of the several available avenues

of relief, such as objecting to the venire in whole or in part, challenging any of the jurors for cause, requesting a continuance or moving for a change of venue. Nor did he ask that the jurors who had read the newspaper articles be instructed not to discuss them among themselves or with their fellow jurors.

Under the circumstances, it could reasonably be expected that McKinney's escape would be mentioned or discussed in the jury room. That cannot be equated with outside influence or the consideration of evidence not already permissibly known to some of the jurors. The members of the venire who had read the newspaper articles answered on voir dire that they did not feel like the information which they read in the newspapers would tend to show that McKinney was guilty or innocent of the crime with which he was charged. If that information did not prejudice them, there is little or no reason to believe that it prejudiced the other jurors.

The most that can possibly be developed from a questioning of the jurors is that there was *some* mention or "discussion" of McKinney's escape during the jury's deliberations. All agree that further inquiry into the jurors' deliberations is not permissible. As ably and succinctly stated by the New Jersey Supreme Court, through its then Justice Brennan:

> "Jurors' testimony as to objective events has been admitted whether occurring within or outside the jury room, and relief from verdicts has been granted if, but only if, prejudice inhered on the face of the matter; jurors' testimony has been disregarded in such cases, however, to the extent it attempts to explain the actual effect of the occurrence upon the verdict."

State v. Kociolek, 1955, 20 N.J. 92, 118 A.2d 812, 58 A.L.R.2d 545, 552.

Such inconclusive inference of guilt as might be drawn from knowledge of McKinney's escape would add practically nothing to the positive and overwhelming evidence of his guilt. This Court, as well as the district court, must necessarily conclude that any mention or "discussion" of McKinney's escape had practically no effect on the jury's verdict.

We simply chose the wrong vehicle to undertake the development of a general rule as to the duty of a district judge in deciding a defendant's motion for new trial when jury misconduct is alleged. Indeed, I do not think that our Court should in any case undertake to promulgate such a general rule. The past literature on the subject is voluminous and shows that the question has arisen under an almost infinite variety of circumstances.[1] Continued development of the jurisprudence can best be accomplished by deciding each case on its own peculiar facts and circumstances.

For the reasons stated, I would grant the Government's petition for rehearing and concur with the view consistently held by Judge Godbold that the judgment should be affirmed. Since that is now the majority view, it is so ordered.

Rehearing granted and judgment affirmed.

GODBOLD, Circuit Judge (specially concurring):

For the reasons stated in my dissenting opinion to the original majority opinion, I agree with Judge Rives that the petition for rehearing should be granted and the judgment affirmed.

GOLDBERG, Circuit Judge (dissenting):

I respectfully dissent. The original opinion which now becomes the minority

---

1. See for example the cases discussed in Wigmore on Evidence, McNaughton Revision, Vol. 8, §§ 2345–2356, and in the Annotation on "Admissibility and effect, in criminal case, of evidence as to juror's statements, during deliberations, as to facts not introduced into evidence," 58 A.L.R.2d 556, as supplemented in the later case service.

one is changed in the following particulars:

Delete the second full paragraph on p. 1026 of 429 F.2d and insert the following:

"Implicit in these cases is the assumption that when jury misconduct is alleged in the defendant's motion for new trial, the trial judge has a duty to take the following actions: (1) He must first consider whether or not the alleged jury misconduct, if it did occur, would be clearly not prejudicial. If he concludes that it would be clearly not prejudicial, he must then spell out his findings with adequate specificity for meaningful appellate review. (2) If he cannot conclude that it would be clearly not prejudicial, he must then conduct a full investigation to ascertain whether or not the alleged jury misconduct occurred. If he concludes that it did occur, he must grant the motion for new trial; if he concludes that it did not occur, he must once again spell out his findings with adequate specificity for meaningful appellate review."

Delete the first full paragraph on p. 1031 of 429 F.2d and insert the following:

"In light of the foregoing, I would remand to the district court with the following directions: (1) The court shall consider whether or not the alleged jury misconduct, if it did occur, would be clearly not prejudicial to McKinney; and, if the court determines that it would be clearly not prejudicial, the court shall enter fact findings adequate to explain fully its denial of the motion for new trial. (2) If the court cannot conclude that the alleged misconduct would be clearly not prejudicial to McKinney, the court shall then hold an evidentiary hearing to determine whether the discussion alleged by McKinney actually took place during the jury's deliberations. With regard to this issue, if the court finds that the alleged jury misconduct did take place, the court shall grant the motion for new trial. If the

court determines that the alleged discussion did not take place, the court shall enter fact findings adequate to explain fully its denial of the motion for new trial."