**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Joseph CHIANTESE and John Joseph Cerrella, Defendants-Appellants.**

**No. 75–3534.**

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1977.

Rehearing and Rehearing En Banc Granted March 28, 1977.

George D. Gold, Miami, Fla., James J. Hogan, Miami Beach, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Miami, Fla., Ann T. Wallace, George S. Kopp, Atty., Dept. of Justice, Washington, D. C., Gary L. Betz, Special Atty., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellants, defendants below, Cerrella and Chiantese were found guilty, after a jury trial, of violating 18 U.S.C. §§ 2[1] and 1951,[2] interference with interstate commerce by extortion. Cerrella was sentenced to 16 years and Chiantese to 13 years imprisonment.

---

1. § 2. Principals

   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. § 1951. Interference with commerce by threats or violence

   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by

The case arose out of competition between two valet parking services, "Kings", which was owned by Mark Parnass, the victim of the attempted extortion and chief witness for the prosecution, and "Sunshine", which was owned by Cerrella and operated by Chiantese.

Parnass testified to a series of meetings between the three of them, the end result of which was an ultimatum that Parnass could either give them a third of his business or quit entirely. Shortly thereafter Parnass reported the events to the FBI. He was wired for sound and subsequently taped a conversation with the defendants. They were arrested and charged in a two count indictment, the second count of which was dismissed prior to trial.

Appellants assert that the trial court erred when it refused to conduct an investigation into the conduct of several jurors who were seen talking and nodding together during the questioning of a government witness by Cerrella's attorney. A bystander who overheard their remarks reported to Chiantese's counsel that one juror, referring to Cerrella's attorney, had stated, "Stupid. Stupid." and, "He's a pain in the ___." When this was reported to the Judge he declined to question the members of the panel, stating that the incident was not analogous to a situation in which a juror has been reading an inflammatory article. The Court noted that the reported conversation was not a discussion of the case and that "jurors obviously form impressions of counsel as the trial (proceeds)."

The second point of error urged is the Court's instruction in which the jurors were told that:

> robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

**3.** At the charge conference Cerrella's attorney objected to the "proof of intent instruction in its entirety, and specifically . . . to the second paragraph of it." Following the instruction the defense counsel objected to the

As a general rule it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. *So, unless the evidence in the case leads the jury to a different or contrary conclusion,* the jury may draw the inference and find that the accused intended all the natural and probable consequences which one, standing in like circumstances and possessing like knowledge, should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused. (Emphasis added.)

Sufficient objection was made to the charge when it was given to preserve the question for appeal.[3]

This charge has become known as the *Mann* instruction.[4] Probably no other jury instruction has received so much attention and repeated condemnation in this Circuit. Despite our emphatic disapproval in a series of cases, this serpent rears its ugly head once again. This charge is so infamous that in the standard text on federal jury instructions its use is referred to as an "invitation to reversible error."[5]

■ We accept that invitation as the only way for our message to get through.

## Mann Oh Mann

When Nathan Mann was prosecuted for tax evasion the trial court stated, "so unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences (of his act)." Even though no objection was made by counsel at the time the charge was giv-

"natural and probable" portion of the instruction.

**4.** It takes its name from the first case in which it reached this Court on appeal, *Mann v. United States,* 5 Cir. 1963, 319 F.2d 404, cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

**5.** Devitt and Blackmar, *Federal Jury Practice and Instructions,* 1970, § 13.06 p. 277.

en, we reversed the lower court, finding the charge to be plainly erroneous. *Mann, supra.* We based our holding on the shifting of the burden of proof to the defendant, the inconsistency of that charge with others given, and the seeming waiver of a finding of specific intent in a crime for which such intent is required.

The next year in *Helms v. United States,* 5 Cir. 1964, 340 F.2d 15, we did not find plain error when the *Mann* charge had been given without objection. But in *Helms* there was no need for finding specific intent, the defendant's objective conduct was the critical issue. Apparently trial judges surmised that we had carved an exception into *Mann* where a showing of subjective intent was not required.

In 1971 we met *Mann* again in *United States v. Jenkins,* 5 Cir. 1971, 442 F.2d 429, where avoiding reversal, we perhaps diluted it by holding that the trial court cured its mistake by following the objectionable charge with one which avoided the vice. Accord, *United States v. Beasley,* 5 Cir. 1975, 519 F.2d 233; *United States v. DeSimone,* 5 Cir. 1971, 452 F.2d 554, cert. denied, 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972).

In *United States v. Wilkinson,* 5 Cir. 1972, 460 F.2d 725, we applied an all facts and circumstances test, looking to the overall effect of the charge rather than isolating single phrases and again did not feel compelled to reverse the conviction.

Just last year in *United States v. Durham,* 5 Cir. 1975, 512 F.2d 1281, we allowed the *Mann* charge to be cured by proper instructions even though they were remotely placed in relation to that charge. Thus we shifted even further from our *Jenkins* decision where the cure had to immediately follow the disease.

Most recently in *United States v. Duke,* 5 Cir. 1976, 527 F.2d 386, we looked to curative instructions in reliance on *Jenkins, Wilkinson* and *Durham* to allow still another *Mann* charge to be sustained.

While it is interesting to recognize that ever since *Mann* we have created exception, allowed dilutions and even allowed miracle cures to avoid reversing a case solely on the giving of a *Mann* charge, at the same time we admonished the lower courts repeatedly to stop using this charge. In *Durham,* we noted our emphatic disapproval of the *Mann* charge and even cited the lower court to a charge given in *Wilkinson* which would be acceptable. *Durham* at 1289. In *Duke,* we pondered why trial judges continue to maintain the charge in their repertoire. "We cannot too strongly admonish them to discontinue its use immediately." *Duke* at 393. Again we cited them to the acceptable charge suggested in *Wilkinson.*

Thus we have preached, and we assumed that the district courts have read our earlier opinions, but as with the boy who yelled wolf too often, our warnings have gone unheeded. We have made efforts to drown, destroy and inter the Blue charge [6] with similar lack of success. After all of this preaching and admonitions we conclude that this case should be the vehicle to bury the condemned, prejudicial charge once and for all. And the way to do it is to reverse the case without adding to the confusion, or worse, an invitation to trial judges to flirt with its use in the hope that we will find some extenuation in the use accompanied by some high sounding, but unheeded, pontifical platitudes that surely never again will it be employed. Until *Mann* is buried by the Court en banc it is very much alive. It is not—the word is not—to be used, and no one, prosecutor or judge can hope to be resuscitated.

### Jury Misconduct

The Supreme Court has said it is imperative "that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbi-

---

6. See *United States v. Blue,* 5 Cir. 1970, 430 F.2d 1286; and *United States v. Oquendo,* 5 Cir. 1974, 490 F.2d 161.

ased judgment. Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated." *Mattox v. United States,* 1892, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921. Thus in subsequent cases new trials were granted where it was shown that a bailiff made prejudicial remarks to a juror, *Parker v. Gladden,* 1966, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420; where newspaper accounts of the trial were seen by jurors, *United States v. Kum Seng Seo,* 3 Cir. 1962, 300 F.2d 623; and where a juror had lunch with one of the witnesses during the trial, *United States v. Marine,* D.C.Del.1949, 84 F.Supp. 785.

This Circuit has addressed the issue of possible jury misconduct numerous times. We have remanded where it was claimed that in their deliberations the members of the jury discussed newspaper accounts of the defendant's jailbreak, and recapture. There we held that the lower court should first determine whether the discussion took place, if so, what prejudice resulted, and unless a finding of no prejudice was made, a new trial should be granted. *United States v. McKinney,* 5 Cir. 1970, 429 F.2d 1019.

In *Johnson v. United States,* 5 Cir. 1953, 207 F.2d 314, we recognized the rule that "communications between jurors and third persons, or witnesses, relative to the case on trial are absolutely forbidden and presumed to be prejudicial." *Johnson* at 322. However, where the court conducted a careful inquiry to determine exactly what happened, testimony of the offending witness was heard, and counsel were given an opportunity to give their versions of what happened and the jury was fully instructed to dismiss the incident from their minds, we found no reversible error.

In another case where the trial court did not sufficiently investigate defense counsel's objection to the jury panel based on a claim that the prosecutor had conversed with the panel during recess, and months had elapsed so that witnesses would have dim recollections of events, we held that a hearing into the propriety of continuing with the jury panel was not adequate and that a new trial would be granted. *United States v. Betner,* 5 Cir. 1974, 489 F.2d 116.

Wright, Federal Practice and Procedure, Vol. 2, § 554, p. 491 (1969) states that "because of the seriousness of possible misconduct affecting the jury, the court must make a full investigation when such a ground is alleged on a motion for a new trial, in order to determine whether the incident occurred as alleged, and, if so, whether it can be said with assurance to have been harmless."

As the Government correctly points out in their brief, we did recognize the discretion of the trial court to determine the extent and type of investigation required to make a ruling on a mistrial motion in *Tillman v. United States,* 5 Cir. 1969, 406 F.2d 930. But in *Tillman* there was little more than conjecture to implicate a juror and the more reasonable inference was that the juror who had made the prejudicial comment was struck from the panel during the voir dire process. So we held in that factual context there was no abuse of discretion in failing to conduct a more thorough investigation since the judge twice questioned the jury about the incident and no juror who was selected for the panel admitted to having made the statement.

■ Here it was stipulated what had occurred. Serious criticisms were directed by a juror against defendant's counsel. What did these pungent words mean? Was it just a reaction to overbearing cross examination of a witness, as the Government suggests? Or was it a disparagement of the whole defense, which would mean a disparagement of the defendants? No one knows, although the answer was close at hand. Granting that the judge may have to walk a tightrope in conducting the inquiry lest it magnify the possible wrong, our survey of decisions by this Circuit, other circuits, and the Supreme Court leads us to conclude that at a minimum the lower court should have conducted an inquiry into the alleged misconduct to determine what prejudice, if any, resulted therefrom and there-

after take appropriate action. The Court erred in its failure to do so.[7]

REVERSED.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, and THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk shall set a briefing schedule for the filing of supplemental briefs.

---

7. Contrary to the government's contention in its supplemental brief, our recent opinion in *United States v. Khoury,* 5 Cir., 1976, 539 F.2d 441, supports the action we have taken today.