**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Andres MARTINEZ,**
**Defendant-Appellant.**

No. 78–5719.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1979.

Rehearing and Rehearing En Banc Denied
Nov. 6, 1979.

Donovan Campbell, Jr. (court-appointed), Dallas, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

WISDOM, Circuit Judge:

The defendant, Andres Martinez, appeals his jury conviction of one count of violating 21 U.S.C. § 846 and one count of violating 21 U.S.C. § 841(a)(1). These counts respectively relate to conspiracy to possess a controlled substance, heroin, with the intent to distribute it, and the completed substantive offense of possessing a controlled substance with the intent to distribute it. He contends that the trial jury was impermissibly tainted, that he was denied his Sixth Amendment right to be present at his trial, and that a prosecution witness's statement warranted a mistrial.[1] None of these contentions are meritorious. We affirm the conviction on both counts.

On September 29, 1976, Officer Mollier, an El Paso police officer assigned to the Drug Enforcement Administration, posed as a drug buyer and asked to purchase heroin from coconspirator Regalado. That evening Mollier, Regalado, and coconspirator Ramirez drove to the Colorado Inn Bar in El Paso, the same place where Mollier had previously purchased heroin from Ramirez. Instructing Mollier to wait in the

---

1. The defendant also mounts a general attack on the sufficiency of the evidence. The standard of review for such a contention "is whether 'viewing the evidence presented most favorable to the Government, a reasonable-minded jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt.'" *United States v. Kohlmann*, 5 Cir. 1974, 491 F.2d 1250, 1253, *accord, United States v. Garner*, 5 Cir. 1978, 581 F.2d 481, 485. The defense focuses its argument on the credibility of certain witnesses. This Court has repeatedly held that it will not disturb the jury's verdict when it is supported by substantial evidence and, "[i]t is not for this Court to weigh the credibility of witnesses". *United States v. Garner*, 5 Cir. 1978, 581 F.2d 481, 485; *United States v. Vomero*, 5 Cir. 1978, 567 F.2d 1315, 1316. Substantial evidence supports the jury's verdict.

car, Ramirez went into the bar. After some time, Martinez approached Ramirez and talked with him. Ramirez came back to Mollier's car and said that his source would sell four ounces at $1,000 an ounce. Martinez left after Ramirez told him of Mollier's acquiescence. Approximately fifteen minutes later he returned with coconspirator Velasquez. She raised her blouse and handed two objects to Martinez, who then gave them to Ramirez. Ramirez gave one to Mollier, who opened it and saw four foil wrapped packets. When questioned about the quality of the heroin Ramirez assured Mollier it was good stuff, commenting that Mollier had bought other heroin from the same source. Mollier and other officers then arrested all four coconspirators. After Martinez's conviction, he was sentenced to concurrent fourteen-year prison terms and fifteen-year special parole terms.

### I.

On the first morning of the trial Martinez, his wife, his sister, and his brother, Alberto Martinez, were sitting together in front of the courtroom. Two policemen approached his brother. One displayed a badge, took Alberto Martinez's right arm, and told him that he was under arrest. Alberto protested loudly. The two officers quickly hustled him onto an elevator. They let him go after they realized they had mistaken him for a third brother. Both officers were important witnesses in the defendant's trial. The incident did not last longer than five minutes.

■ The next day, after the prosecution and the defense had finished their cases, the defense attorney moved for a mistrial because of this incident, contending that jur-

ors could have seen it. After taking testimony from one of the arresting officers and from the defendant's relatives,[2] the court called in all the jurors individually, asking if each had witnessed any disturbance in the courthouse the preceding day. The judge instructed the jurors to refrain from discussing the instructions and speculating why they were asked.

The trial judge's questioning revealed that two jurors and the alternate juror had seen all or part of the incident. Juror Pillado stated that she had seen an "older gentleman" arrested. The following exchange then took place:

Q. Did you make any connection between the man who you saw taken and your service as a juror?
A. Yes, I did, because the lady went back and sat with the defendant and somebody else.

Juror Valdez stated that he saw "probably FBI agents grab this man, put him in the elevator". Alternate juror Love noticed only that the sister of the defendant was talking with someone. Both stated that they did not think the incident related to their service as a juror and that they would be fair and impartial.

■ When recalled juror Pillado stated that she had not discussed the disturbance with any jurors. Juror Valdez stated that he had discussed it with Pillado and that he thought that the arrested individual must have been the defendant's father. He reiterated that his impartiality was unaffected, "because I would consider that it could have happened anywhere else, and it would just be another matter". Alternate juror Love stated that she had not discussed it with anyone.[3] After this testimony the defense

**2.** During the court's investigation the federal prosecutor admitted that he had authorized the officers to arrest the brother in the courtroom. Although we find no prejudice occurred in this case, such conduct was improper. We can readily imagine other cases in which it might constitute reversible error.

**3.** At this point in the trial the judge mistakenly called the wrong juror, and the following conversation took place:

Q: You may be seated, Ms. Tavares. You will recall the subject of our earlier discussion concerning what you may have witnessed after you came to the courthouse yesterday morning. Did you discuss what you observed after you came into the courthouse yesterday morning with any witness?
A: I didn't observe nothing, sir.
The trial judge then realized his mistake and sent Ms. Tavares to the jury room. The defendant now argues that this conversation

counsel again moved for a mistrial. The court denied it, but put alternate juror Love on the jury in place of Pillado because of Pillado's statement that she did connect the arrest with her service as a juror.

The defendant argues that a mistrial should have been granted, citing cases which discuss the importance of an impartial jury. *See, e. g., Mattox v. United States*, 1892, 146 U.S. 140, 149–50, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921; *Paramount Film Distrib. Corp. v. Applebaum*, 5 Cir. 1954, 217 F.2d 101, 105, *cert. denied*, 1955, 349 U.S. 961, 75 S.Ct. 892, 99 L.Ed. 1284. Martinez contends that this Court must follow the test articulated in *United States v. McKinney*, 5 Cir. 1970, 429 F.2d 1019.

> Implicit in [prior cases] is the assumption that when jury misconduct is alleged in the defendant's motion for a new trial, the trial judge has a duty to take the following actions: he must conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred; if it occurred, he must determine whether or not it was prejudicial; unless he concludes that it was clearly not prejudicial, he must grant the motion for new trial; if he concludes that it did not occur or that it was clearly not prejudicial, he must spell out his findings with adequate specificity for meaningful appellate review.

*Id.* at 1026.

This test has never been adopted by this circuit. On rehearing, *McKinney* was reversed. 434 F.2d 831, *cert. denied*, 1971, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825. The Court stated, "I do not think that our Court should in any case undertake to promulgate such a general rule," 434 F.2d at 833. (The author of that opinion cited the test approvingly in a subsequent case and stated that the rule should be the same for a mistrial motion as for a new trial motion. *United States v. Betner*, 5 Cir. 1974, 489 F.2d 116, 119.) Subsequent decisions have not adhered to the steps prescribed by the *McKin-*

ney test. *See, e. g., United States v. Herring*, 5 Cir. 1978, 568 F.2d 1099, 1104–06, 1105 n.16; *United States v. Chiantese*, 5 Cir. 1977, 546 F.2d 135, 138, *modified and remanded*, 5 Cir. 1977, 560 F.2d 1244 (en banc), *modified*, 5 Cir. 1978, 582 F.2d 974; *United States v. Khoury*, 5 Cir. 1976, 539 F.2d 441, 443, *cert. denied*, 1977, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752. On rehearing in *Chiantese*, this Court noted that "the decision to hold a hearing to determine whether juror misconduct has occurred is within the sound discretion of the trial judge and . . . his ruling will not be reversed unless it constitutes an abuse of that discretion". 582 F.2d at 978. In determining whether to conduct a hearing, "the court must balance the probable harm resulting from the emphasis such action would place upon the misconduct and the disruption involved in conducting a hearing against the likely extent and gravity of the prejudice generated by that misconduct". 582 F.2d at 980.

 The trial judge in this case has adhered to the *Chiantese* admonitions—he investigated the incident while minimizing the deleterious effects of the inquiry. He questioned jurors individually and cautioned them not to discuss the questions or to speculate on their implications. He removed the only juror whose answers arguably indicated prejudice. After finding that neither of the other onlookers would be prejudiced against the defendant and that one noticed only that the defendant's sister was talking with someone, he found that the jury's impartiality had not been endangered. We do not find any abuse of discretion in these determinations. No "jury misconduct" took place, so the judge did not need to undertake a full-blown *McKinney* investigation. Indeed, such a course could have encouraged the jury to dwell on the arrest of the other individual. In other circumstances extraneous events may be prejudicial. A trial judge has an ever-present duty to ascertain whether a jury

---

tainted juror Tavares by planting "suspicion and unnecessary questions" in her mind. The incident was not even mentioned among the

jurors. In addition, the jurors were warned not to discuss the judge's questions. No prejudice occurred.

has been affected by events occurring outside of the trial.

## II.

After a luncheon recess on the trial's first day the judge noticed that the defendant was absent. The defense counsel said that he had gone to look for a witness and should have returned already. When asked, the attorney stated that he could conduct the defense alone. The judge called in the jury and told them that he had been informed the defendant was "inadvertently detained". Martinez returned during an afternoon recess. After the jury was excused at the end of the day the judge explained to Martinez the importance of his presence:

> I will tell you that it is most important that you be present for every single phase of your trial, because if you're not present, you're not able to know what happens, and you're not able to advise with your attorney, and you're not able to know or give him information that he might need in connection with your defense.

He added that the trial would proceed at 9:00 the next day whether or not Martinez was present.

Although Martinez had said he would attend, he disappeared between 8:30 and 9:00 the next morning. The court revoked bond but instructed the marshal to make sure that the defendant did not appear in court "shackled or handcuffed". When the trial recommenced the district court instructed the jury not to discuss the defendant's absence or draw any conclusion from it. The court refused to allow the prosecution in its summation to mention the absence of Martinez and instructed the jury that "you are not to consider the absence of the defendant, Andres Martinez, for any purpose".

The defendant now contends that the district judge violated his constitutional rights by continuing the trial in his absence. Because no objection was timely made at trial, the judge's decision must be affirmed unless it is plain error. *See* Fed.R.Crim.P. 52(b). No error was committed here. Rule 43(b) allows "further progress" of a trial and waiver of the defendant's right to be present "whenever a defendant, initially present, (1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial)". Fed.R.Crim.P. 43(b). The Advisory Committee on Rules states that "proof of voluntary absence will require a showing that the defendant knew of the fact that the trial or other proceeding was going on". Notes on the 1974 Amendment by the Advisory Committee on Rules.

Here the judge informed everyone that the trial would be continued after the luncheon recess. At the end of that day he told the defendant that he should be back by 9:00 the next day. The defendant answered that he would be present. The Rule's requirements are met.

The defendant contends that the trial court has only "a narrow discretion" to continue in the defendant's absence. *Smith v. United States*, 5 Cir. 1966, 357 F.2d 486, 490, and that the court should "careful[ly] balanc[e] defendant's right to confront his accusers, and other possible prejudice which might result from his absence, . . . against the time and expense caused by defendant's efforts to defeat the proceedings by his departure or flight." *Id.* The judge's discretion was not abused here: He went beyond the requirements of the Rule and explained the importance of the defendant's presence at the trial.

This case should be distinguished from *United States v. Benavides*, 5 Cir. 1979, 596 F.2d 137, in which this Court ruled that the judge had abused his narrow discretion in holding a trial without the defendants. There the defendants apparently disappeared between the time of the jury selection and the beginning of the trial. *Id.* at 138. Here the defendant vanished after the trial had begun, evidence had been taken, and he had been specifically warned of the importance of his presence.

This case is similar to *Gaither v. United States*, D.C.Cir. 1969, 134 U.S.App.D.C. 154, 413 F.2d 1061. There the court based its

finding of voluntary absence on four considerations: (1) after the defendant had been late once, the judge warned him to be present or face revocation of bail, (2) defense counsel had not objected to continuation of the trial, thus suggesting that he considered the absence voluntary, (3) the defendant was not taken into custody again until nearly three weeks after the trial, and (4) no explanation of his absence was ever tendered. All four of these considerations are present in this case; indeed, here the defendant was not apprehended for approximately two years after the trial.

### III.

■ The defendant also moved for mistrial because of a supposedly nonresponsive and prejudicial answer given at trial by Mollier, the undercover policeman buying the heroin. The motion relates to the following exchange, involving the defense counsel's attempt to discredit Mollier's identification of Martinez:

Q Is that the only—have you ever seen Andres Martinez from that date until this date?

A I believe that I have, Mr. Marshall.

Q Have you maintained on [sic] surveillance on him since that date until this date?

A No, we have not.

Q Where have you seen him since that date?

A It's my belief—and, only my belief, because I was the only one involved at the time—that he possibly was at the same location where another transaction on a separate case that transpired two and a half weeks ago, I think he was there.

Q Did you arrest him for another transaction?

A No, sir.

Q And you're not sure that he was there. Did you see him there?

A I believe I saw him.

Q Was he involved in that transaction?

A I believe he was involved, but—

Q He has not been charged in another transaction?

A No, sir.

The defense complains that these statements introduced evidence of another offense. This contention is without merit because of the "invited error" doctrine: "The accepted rule is that where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error." *United States v. Doran*, 5 Cir. 1977, 564 F.2d 1176, 1177, *cert. denied*, 1978, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524; *accord, United States v. Rodriguez*, 5 Cir. 1975, 510 F.2d 1; *United States v. Pentado*, 5 Cir. 1972, 463 F.2d 355; *United States v. Davis*, 5 Cir. 1971, 443 F.2d 560, *cert. denied*, 1971, 404 U.S. 945, 92 S.Ct. 298, 30 L.Ed.2d 260; *Roland v. United States*, 5 Cir. 1961, 295 F.2d 471. Here the defense counsel pursued his questioning until he dragged the prejudicial statements out of the witness.

The defendant also contends that the judge committed error in refusing trial counsel's request that the judge instruct the jury to disregard the prejudicial statement. Actually only the request for a mistrial was denied. The trial judge stated he would consider the defense attorney's requested instruction that the jury consider "no other information which may have reached its ears about any other transaction other than what is covered by the indictment". Ultimately, he did instruct the jury that it "must not consider the guilt or innocence of the defendant in any other crime".

The conviction is AFFIRMED.